# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS O. MATULA JR., individually and as representative of a class of participants and beneficiaries on behalf of the Wells Fargo & Company 401(k) Plan,<br><br>          Plaintiff,<br><br>   v.<br><br>WELLS FARGO & COMPANY; HUMAN RESOURCES COMMITTEE OF THE BOARD OF DIRECTORS OF WELLS FARGO; WELLS FARGO EMPLOYEE BENEFIT REVIEW COMMITTEE; and DOES 1-10, inclusive,<br><br>          Defendants. | Case No. 0:24-cv-03703-JRT-TNL |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ............................................................................. 1

STANDARD OF REVIEW ................................................................................. 4

BACKGROUND ............................................................................................. 5

    A.    The Wells Fargo & Company 401(k) Plan............................................. 5

    B.    Plan Expenses............................................................................... 7

    C.    Matula's Release of Claims............................................................. 7

    D.    The Complaint............................................................................... 8

ARGUMENT ................................................................................................. 9

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE MATULA LACKS ARTICLE III STANDING TO ASSERT HIS CLAIMS........................... 9

    A.    Matula Lacks Standing Because He Received All Benefits To Which He Was Entitled ........................................................... 10

    B.    Matula's Alleged Harm Is Not Redressable.................................... 14

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE MATULA'S CLAIMS ARE NOT LEGALLY VIABLE.............................................. 16

    A.    The Complaint Should Be Dismissed Because Matula Released All Of His Claims....................................................................... 16

    B.    The Complaint Fails To State A Claim For Breach Of Fiduciary Duty ...... 18

    C.    The Complaint Fails To State A Claim For Violation Of ERISA's Anti-Inurement Clause ............................................................... 22

    D.    The Complaint Fails To State A Prohibited Transaction Claim ................. 24

    E.    The Complaint Fails To State A Duty to Monitor Claim............................ 26

CONCLUSION ........................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allen v. Wells Fargo & Co.,*
  967 F.3d 767 (8th Cir. 2020) ...................................................................... 26

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................... 4

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.,*
  168 F.3d 671 (3d Cir. 1999)....................................................................... 20

*Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan,*
  2017 WL 8948732 (N.D. Cal. Jan. 18, 2017)............................................. 25

*Chao v. Hagemeyer N. Am., Inc.,*
  2006 WL 8443663 (D.S.C. Oct. 20, 2006) .................................................. 25

*Chaplin v. NationsCredit Corp.,*
  307 F.3d 368 (5th Cir. 2002) ...................................................................... 17

*Curtiss-Wright Corp. v. Schoonejongen,*
  514 U.S. 73 (1995)...................................................................................... 11

*David v. Alphin,*
  2008 WL 5244504 (W.D.N.C. Dec. 15, 2008), *aff'd,* 704 F.3d 327 (4th
  Cir. 2013) .................................................................................................... 15

*Davis v. Washington University,*
  960 F.3d 478 (8th Cir. 2020) ...................................................................... 5

*Dimou v. Thermo Fisher Sci. Inc.,*
  2024 WL 4508450 (S.D. Cal. Sept. 19, 2024)..................................... passim

*Fair v. Int'l Flavors & Fragrances, Inc.,*
  905 F.2d 1114 (7th Cir. 1990) .................................................................... 17

*Fifth Third Bancorp v. Dudenhoeffer,*
  573 U.S. 409 (2014)..................................................................................... 4

*Foltz v. U.S. News & World Rep., Inc.,*
  865 F.2d 364 (D.C. Cir. 1989) .............................................................. 20, 21

*Fox v. McCormick*,
  20 F. Supp. 3d 133 (D.D.C. 2013) ........................................................ 12, 14

*Gagliano v. Reliance Standard Life Ins. Co.*,
  547 F.3d 230 (4th Cir. 2008) ................................................................. 12

*Gelschus v. Hogen*,
  2021 WL 5087549 (D. Minn. Apr. 6, 2021) ............................................ 4

*Gerhardson v. Gopher News Co.*,
  2010 WL 3463495 (D. Minn. Aug. 30, 2010) (Tunheim, J.) ..................... 20

*Glanton v. AdvancePCS Inc.*,
  465 F.3d 1123 (9th Cir. 2006) ................................................................ 15

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
  858 F. App'x 432 (2d Cir. 2021) ............................................................ 11

*Harley v. Minn. Mining & Mfg. Co.*,
  284 F.3d 901 (8th Cir. 2002) ................................................................. 10

*Henry v. Champlain Enters., Inc.*,
  445 F.3d 610 (2d Cir. 2006) (Sotomayor, J.) .......................................... 12

*Holliday v. Xerox Corp.*,
  732 F.2d 548 (6th Cir. 1984) ................................................................. 23

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ......................................................................... 20, 23

*Hutchins v. HP, Inc.*,
  2024 WL 3049456 (N.D. Cal. June 17, 2024) .................................. passim

*Kitterman v. Coventry Health Care of Iowa, Inc.*,
  632 F.3d 445 (8th Cir. 2011) ................................................................. 20

*Knudsen v. MetLife Grp., Inc.*,
  2024 WL 4282967 (3d Cir. Sept. 25, 2024) ............................................ 10

*Krohnengold v. N.Y. Life Ins. Co.*,
  2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022) .......................................... 23

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ......................................................................... 24, 25

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 9, 14

*Maez v. Mountain States Tel. & Tel., Inc.*,
    54 F.3d 1488 (10th Cir. 1995) ......................................................................... 23

*Magruder Constr. Co. v. Gali*,
    2020 WL 1512478 (E.D. Mo. Mar. 30, 2020) ............................................... 17

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
    811 F.3d 998 (8th Cir. 2016) ........................................................................... 18

*Mead v. Intermec Techs. Corp.*,
    271 F.3d 715 (8th Cir. 2001) ........................................................................... 17

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ............................................................................. 4

*Middleton v. Amentum Gov't Servs. Parent Holdings, LLC*,
    2024 WL 3826111 (D. Kan. Aug. 14, 2024) ................................................. 16

*Naylor v. BAE Sys., Inc.*,
    2024 WL 4112322 (E.D. Va. Sept. 5, 2024)............................................. passim

*Osborn v. United States*,
    918 F.2d 724 (8th Cir. 1990) ............................................................................. 4

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ......................................................................................... 18

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013).............................................................................. 4

*Perez-Cruet v. Qualcomm Inc.*,
    2024 WL 2702207 (S.D. Cal. May 24, 2024)........................................... 15, 19

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
    541 U.S. 1 (2004).............................................................................................. 22

*Rodriguez v. Intuit Inc.*,
    2024 WL 3755367 (N.D. Cal. Aug. 12, 2024) ......................................... 15, 19

*Scott v. UnitedHealth Grp., Inc.*,
    540 F. Supp. 3d 857 (D. Minn. 2021) (Schlitz, J.) ........................................ 11

*Smith v. UnitedHealth Grp. Inc.*,
  106 F.4th 809 (8th Cir. 2024) ............................................... 10, 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................ 9

*Stanley v. George Washington University*,
  394 F. Supp. 3d 97 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir.
  2020) ................................................................................ 5, 17

*Taveras v. UBS AG*,
  612 F. App'x 27 (2d Cir. 2015) ............................................ 10

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020) ................................................... 9, 10, 11

*U.S. Airways v. McCutcheon*,
  569 U.S. 88 (2013) ............................................................... 11

*Useden v. Acker*,
  947 F.2d 1563 (11th Cir. 1991) ........................................... 18

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
  62 F.4th 517 (9th Cir. 2023) ............................................... 14

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ............................................. 20

## STATUTES

ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) .............................. 22

ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1) .............................. 8, 22

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ......................... 8

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ......................... 8

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ....................... 19

ERISA § 406(a) 29 U.S.C. § 1106(a) .................................... 9, 24

ERISA § 406(b), 29 U.S.C. § 1106(b) ........................................ 9

ERISA § 406(a)(1) 29 U.S.C. § 1106(a)(1) ............................... 24

ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) ...................................................... 24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ............................................................................ 2, 4, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2, 4, 13

26 C.F.R. § 1.401-7(a) ...................................................................................... 21

88 Fed. Reg. 12282-01 (Feb. 27, 2023) (to be codified at 26 C.F.R. pt. 1) ...................... 21

## PRELIMINARY STATEMENT

Wells Fargo & Company ("Wells Fargo") offers its employees the opportunity to save for retirement by contributing a portion of their earnings into a 401(k) individual account plan. In addition, Wells Fargo provides eligible employees with a generous matching contribution of up to 6% of each employee's eligible compensation, as well as other types of employer contributions. Under the terms of the plan, some of these employer contributions vest immediately, while others vest after three or more years of employment. If an employee leaves employment before the employer contributions vest, the plan document provides that the employer contributions are forfeited and *mandates* that they be used in one of three ways: to offset future employer contributions, to pay plan expenses, or to make corrective adjustments to employee accounts.

Like many other recently filed lawsuits, this putative class action commenced by Plaintiff Thomas O. Matula Jr. ("Matula") alleges that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") by using forfeited employer contributions to offset Wells Fargo's future employer contributions to plan participants, rather than to reduce plan administrative expenses paid by those participants. What makes this case distinguishable from all the others, however, is that here *Wells Fargo pays all of the plan's administrative expenses*—not one penny is deducted from participant accounts for this purpose. Because Matula has not paid any plan administrative expenses, it follows that he has not suffered an injury from any alleged failure to allocate forfeitures toward those expenses and he thus lacks Article III standing to pursue his claims. Matula's alternative position that the forfeitures should have been

deposited in his plan account to *increase* his benefit and provide him with a windfall is equally unavailing since, as noted, the plan document mandates that forfeitures be used in only one of three ways and increasing the amount of benefits payable to participants is not one of them. Courts have uniformly rejected, on Article III standing grounds, statutory claims like Matula's for benefits beyond those provided by the plan. His claims should thus be dismissed for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

Independently, the Complaint fails to state a viable claim for relief for several reasons and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6):

To begin with, all of Matula's claims were released when, in connection with his departure from Wells Fargo, Matula signed a release of all claims relating to his employment in exchange for severance pay. The claims in the Complaint, all of which seek enhanced retirement benefits under an employer-sponsored plan, plainly relate to Matula's employment and thus fall squarely within the scope of the release.

Furthermore, Matula's claims are legally meritless. Matula's claim for breach of fiduciary duty (Count I) fails because the Complaint does not plausibly allege that the plan administrator acted as a fiduciary when allocating forfeitures, which is an essential predicate to this claim. This is not surprising since the plan document *mandates* that forfeitures be used to offset future employer contributions, thereby eliminating the discretion over plan assets that ERISA requires for fiduciary status. Additionally, even if the Complaint alleged fiduciary status (which it does not), it does not plead a viable claim of a breach because Defendants acted in accordance with the plan's terms by allocating forfeitures to employer contributions, which is the antithesis of a breach and precisely

2

what ERISA requires. Another court recently dismissed an identical claim where the plan similarly directed that forfeitures be used to reduce employer contributions. *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024). And two other courts have rejected the same claim on the additional ground that the allocation of forfeited employer contributions to future employer contributions comports with established regulations. *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024); *Hutchins v. HP, Inc.*, 2024 WL 3049456, at *6–7 (N.D. Cal. June 17, 2024).

Matula's claim that Defendants violated ERISA's anti-inurement clause (Count II) fails because the allocation of forfeitures to fund benefits for participants does not constitute a violation of ERISA's anti-inurement rule, even if Wells Fargo's contribution obligation was reduced as a result.

Matula's claim that Defendants violated ERISA's prohibited transaction rules (Count III) fails because allocating forfeitures to future contribution obligations is not a "transaction" within the meaning of ERISA, let alone a transaction that puts the plan at risk of underfunding, which is what the prohibited transaction rules were designed to avoid.

Lastly, Matula's claim for breach of the duty to monitor (Count IV) fails because it is derivative of his breach of fiduciary duty claim and cannot survive without a plausible fiduciary breach claim.

In short, the Complaint should be dismissed without leave to replead for all of the above reasons, each of which independently justifies dismissal.

## STANDARD OF REVIEW

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts "must distinguish between a facial attack and a factual attack." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal quotations and citations omitted). Here, Defendants' motion to dismiss is in the nature of a facial attack, since, even assuming the truth of the allegations in the Complaint, Matula has suffered no Article III injury-in-fact cognizable under ERISA, and any alleged harm is not redressable by a favorable decision in any event.

To withstand dismissal under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must allege facts establishing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Supreme Court has emphasized that a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). A participant armed with no more than conjecture should not be permitted to drag plan fiduciaries through costly discovery and litigation in an attempt to extract a settlement of otherwise baseless claims. *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

In evaluating Defendants' motion to dismiss, both for lack of standing and failure to state a claim, this court may consider documents "embraced by the pleadings." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018); *Gelschus v. Hogen*, 2021 WL 5087549, at *2 (D. Minn. Apr. 6, 2021). Courts addressing similar ERISA

claims thus routinely consider the (1) plan document, *id.*; (2) annual ERISA-required participant fee disclosures provided to Matula that expressly state Wells Fargo pays for all of the plan's administrative expenses, *Davis v. Washington University*, 960 F.3d 478, 484 n.3 (8th Cir. 2020); and (3) release agreements, *Stanley v. George Washington University*, 394 F. Supp. 3d 97, 104 n.4 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020).

## BACKGROUND

### A.    The Wells Fargo & Company 401(k) Plan

The Wells Fargo & Company 401(k) Plan ("Plan") is a defined contribution 401(k) plan, meaning it provides participants with retirement benefits equal to the contributions made into their accounts and investment earnings on those contributions from one or more of the investment options made available to them in the Plan. (ECF No. 1 (Compl.), ¶¶ 44, 49–50; Declaration of Sharon C. Hogg ("Hogg Decl.") Ex. A (2024 Plan Document) at § 1.4.) In order to assist participants in building their retirement income, Wells Fargo supplements participant contributions with employer contributions, including, for example, "matching contributions" and "base contributions."[1] (Hogg Decl. Ex. A at §§ 5.1, 5.2(c).)

Under Section 9.2 of the Plan, participants immediately vest in their own contributions to the Plan, as well as matching contributions if they commenced

---

[1] Base contributions are contributions for persons whose eligible earnings and certain elective deferrals to another plan are below a certain monetary threshold. (*Id.* at § 5.2(a).)

employment before January 1, 2021. (*Id.* at § 9.2(a).)[2] For participants who commenced employment more recently, matching contributions do not vest until the participant has been employed for at least three years. (*Id*. at § 9.2(b).) Similarly, base contributions are subject to a three-year vesting schedule. (*Id*. at § 9.2(c).) If a participant leaves employment with Wells Fargo before having vested in the employer contributions, they are forfeited. (*Id*. at §§ 7.2(h), 9.2(f).) In the event the participant returns to employment within a certain period prescribed by the Plan, the forfeited contributions are reinstated. (*Id*. at § 9.2(g).) [3]

The forfeited contributions that are not reinstated must be used in one of three ways. Specifically, Section 6.5 of the Plan[4] states that forfeitures

> ***shall be*** applied . . . as a credit against the Base or Matching Contributions to be made for the current year by the Participating Employers, to pay expenses of the Plan or to make corrective adjustments to Accounts, each as determined by the Plan Administrator in its sole discretion. (emphasis added).[5]

---

[2] The Plan has some exceptions, for example, for termination dates before January 1, 2010. (Hogg Decl. Ex. A at § 9.2(d)(4).)

[3] The Plan document provides that contributions that have not vested remain in participant accounts essentially waiting to be reinstated until there has been a break in service (of five years). At that time, the contributions are forfeited and become available for use under Section 6.5 of the Plan within the calendar year. (*Id*. Ex. A at §§ 7.2(h), 9.2(f).)

[4] Section 6.5 of the Plan (previously Section 6.4) has remained materially the same over the past six years. (*Id.* Exs. B–G.)

[5] A corrective adjustment would be made in the event of an administrative error in the allocation of contributions. (*Id.* Ex. A at § 12.6.)

B.    **Plan Expenses**

ERISA plans incur certain expenses in their day-to-day administration. For example, 401(k) plans have a recordkeeper that, among other things, tracks participant contributions, investments, and earnings thereon and credits these amounts to their plan account balances; and there are expenses for preparing and publishing participant communications. In the case of the Plan, these administrative expenses are paid by Wells Fargo in its capacity as Plan sponsor. (Hogg Decl. Ex. H (2018 Participant Disclosure) at 1 ("Wells Fargo currently pays the administrative expenses associated with the 401(k) Plan, including the 401(k) Plan's recordkeeping, accounting, and legal expenses."); Ex. I (2019 Participant Disclosure) at 7 ("Wells Fargo & Company currently pays all administrative expenses to operate the 401(k) Plan"); Ex. J (2020 Participant Disclosure) at 1,7; Ex. K (2021 Participant Disclosure) at 6; Ex. L (2022 Participant Disclosure) at 6; Ex. M (2023 Participant Disclosure) at 6).

C.    **Matula's Release of Claims**

Matula is a former employee of Wells Fargo Bank, N.A. ("WFBNA"), who made employee contributions and received employer contributions into his Plan account during his employment. (ECF No. 1, ¶ 7.) In August 2023, his employment was terminated. In advance of his termination and in exchange for severance pay, Matula signed an Agreement and Release of Claims wherein he released WFBNA and "its successors, subsidiaries, affiliates, parents, related companies, employees, officers, agents, and directors" from "all claims, liabilities, demands, and causes of action, known or unknown, likely or unlikely, which you may have or claim to have against the Company,

as a result of your employment with or separation from employment." (Declaration of Janell Kavanaugh, Ex. A (Release Agreement) at ¶ 3.)

**D.    The Complaint**

Matula filed the Complaint in the U.S. District Court for the Northern District of California and, upon joint stipulation due to the Plan's binding venue selection provision, the action was transferred to this Court. (ECF No. 21.)

The Complaint alleges that Wells Fargo impermissibly used forfeited employer contributions to offset its future contributions. (ECF No. 1, ¶¶ 21–23.) Matula contends that the use of the forfeitures to offset future contributions "benefitted Defendants, but harmed the Plan and participants in the Plan, by reducing Plan assets, not allocating forfeited funds to participants' accounts, and/or by causing participants to incur expenses that could otherwise have been covered in whole or in part by forfeited funds." (*Id.* at ¶ 22.) Notably, Matula nowhere alleges that his Plan account was reduced through the payment of Plan administrative expenses, and, as discussed above, Plan disclosures confirm that these expenses were not borne by participants.

The Complaint advances four causes of action under ERISA:

- Count I: Defendants allegedly breached ERISA's fiduciary duties of loyalty and prudence, ERISA Sections 404(a)(1)(A) & 404(a)(1)(B), 29 U.S.C. §§ 1104(a)(1)(A) & (B). (ECF No. 1, ¶¶ 36–43.)

- Count II: Defendants allegedly violated ERISA's "anti-inurement" provision, ERISA Section 403(c)(1), 29 U.S.C. § 1103(c)(1). (ECF No. 1, ¶¶ 44–48.)

8

- <u>Count III</u>: Defendants allegedly violated ERISA's prohibited transaction rules, ERISA Sections 406(a) & 406(b), 29 U.S.C. §§ 1106(a) & (b). (ECF No. 1, ¶¶ 49–54.)

- <u>Count IV</u>: Wells Fargo allegedly breached a fiduciary duty to monitor the Human Resources Committee of the Board of Directors and Employee Benefit Review Committee by failing to take action to ensure the Committees complied with their own fiduciary obligations. (*Id.*, ¶¶ 55–59.)

Matula seeks to represent a putative class of all Plan participants and beneficiaries who participated in the plan "at anytime within the longest statute of limitations for each claim pled[.]" (*Id.*, at ¶ 24.)

## <u>ARGUMENT</u>

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE MATULA LACKS ARTICLE III STANDING TO ASSERT HIS CLAIMS.

As a threshold matter, Matula cannot proceed with his claims because he lacks constitutional standing. "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As discussed below, Matula fails to meet the constitutional standing requirements with

respect to all claims asserted in the Complaint because he has not alleged any injury-in-fact, let alone an injury that is redressable by a favorable decision.

### A.    Matula Lacks Standing Because He Received All Benefits To Which He Was Entitled.

Matula lacks standing to bring his claims because he does not allege that he was deprived of any benefits promised under the Plan. In *Thole*, the Supreme Court held that, to have standing to assert ERISA breach of fiduciary duty claims, participants are required to allege a personal injury to their own plan benefits. 590 U.S. at 542. While the *Thole* defendants allegedly caused the plan to sustain investment losses, the plaintiffs received all benefits they were "legally and contractually entitled to receive" under the terms of the plan, and they "would still receive the exact same monthly benefits" regardless of whether they won or lost the suit. *Id.* at 540–41. Finding that the plaintiffs lacked a "concrete stake" in the lawsuit, the Court held that they lacked Article III standing. *Id.* at 542*; see also Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809 (8th Cir. 2024) (affirming dismissal for lack of Article III standing, where participants did not allege that they were denied any contractual benefits); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002) (affirming dismissal of participant claims where plan suffered reduction of assets caused by investment losses, but participants' benefits were not impacted); *Knudsen v. MetLife Grp., Inc.*, 2024 WL 4282967, at *7 (3d Cir. Sept. 25, 2024) (holding that plaintiffs lacked standing because they failed to establish an "individual right" to funds) (citation omitted); *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (affirming dismissal of fiduciary breach claim where plaintiff alleged harm

to the 401(k) plan, but not to her individual plan account); *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 862, 865 (D. Minn. 2021) (Schlitz, J.) (dismissing for lack of Article III standing ERISA claims challenging fiduciary's use of overpayments to fund future claims where plaintiffs were never denied benefits).

In determining whether participants have received their full plan benefit (and thus have no Article III injury), the written plan document is controlling. *See, e.g.*, *Thole*, 590 U.S. at 547 (ruling that plaintiffs lacked Article III standing to pursue their ERISA fiduciary breach claims since they received all past benefits and future benefits were contractually set by the plan); *see also U.S. Airways v. McCutcheon*, 569 U.S. 88, 100–01 (2013) ("The statutory scheme, we have often noted, is built around reliance on the face of written plan documents") (citation omitted); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("A written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan.").

Courts have consistently found an Article III injury to be lacking where, as here, a plaintiff could not point to a loss of a contractually-defined plan benefit, but rather contended that their ability to receive *additional* benefits was compromised by an alleged ERISA violation. *See, e.g.*, *Smith*, 106 F.4th 809, 813-14 (affirming dismissal of ERISA claims for lack of Article III injury where plaintiffs conceded they received their contractually-promised benefits and their claimed injury was cash payments allegedly payable under an ERISA-compliant plan); *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 434 (2d Cir. 2021) (affirming dismissal for lack of

standing where health plan participants did not allege a loss of plan benefits but rather claimed that "they might have received better health benefits or a cash alternative" had defendants not misappropriated employer contributions to the plan); *Fox v. McCormick*, 20 F. Supp. 3d 133, 138, 141–42 (D.D.C. 2013) (dismissing for lack of standing participants' breach of fiduciary duty claim against trustees, alleging that "pension benefits would be greater but for Trustees' failure to collect" delinquent contributions, where the delinquency did not put the benefits at risk). These decisions are in keeping with the bedrock principle that "[t]he aim of ERISA is to make the plaintiffs whole, but not to give them a windfall." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) (Sotomayor, J.) (internal quotations and citation omitted).

The recent decision in *Naylor v. BAE Systems, Inc.*, is on point. 2024 WL 4112322, at *6. In *Naylor*, the plaintiff posited that defendants violated the same provisions of ERISA as asserted here by using forfeited employer contributions to offset future contributions rather than to reduce administrative expenses paid by them and/or to increase participant accounts. *Id*. at *5. Defendants sought dismissal of the claims, most prominently because the plan document *mandated* that forfeitures be used for employer contributions, only permissively allowed them to reduce plan expenses if not used to reduce contributions, and was silent as to whether they could be used to increase participant benefits. The court dismissed the claims, emphasizing that "ERISA requires the Plan be administered as written and to do otherwise violates not only the terms of the Plan but causes the Plan to be in violation of ERISA." *Id*. at *6 (quoting *Gagliano v. Reliance Standard Life Ins. Co*., 547 F.3d 230, 239 (4th Cir. 2008)). In so ruling, the

12

court rejected plaintiff's argument that defendants were "required by ERISA to disregard the terms of the Plan and, contrary to the terms of the Plan, prioritize the use of forfeitures for, *inter alia*, the payment of administrative costs or a windfall to Plan participants," noting that disregarding plan rules to maximize participant benefits was "a proposition uniformly rejected by the courts." *Naylor*, at *6 (collecting cases).[6]

The same result is warranted here. Matula has not alleged, and cannot establish, the requisite injury-in-fact to pursue a claim for himself or on behalf of the Plan because he received all benefits due to him, including all employer contributions payable to him by Wells Fargo. His claim that forfeited employer contributions should have been used to reduce the expenses of the Plan does not afford him Article III standing, since, as discussed above, participants do not pay for any Plan administrative expenses; accordingly, Matula's account was not reduced by any expenses. And his position that forfeitures should have been deposited in participant accounts to increase their benefits in excess of the benefits provided for under the terms of the Plan is insufficient to establish an injury since, under Section 6.5 of the Plan, forfeitures may *only* be allocated to participant accounts to make "corrective adjustments," not to increase benefits. Under the authorities discussed above, Matula cannot establish an Article III injury by claiming that

---

[6] Although the court in *Naylor* addressed and rejected the plaintiff's claim for increased benefits on a motion made under Rule 12(b)(6), the principles applied there apply equally to a motion under Rule 12(b)(1), since they mirror the Eighth Circuit's view that a participant who has not been denied a contractual benefit lacks Article III standing to seek additional benefits stemming from an alleged statutory violation. In any event, as discussed *infra* at 18-22, this Court could also dismiss the Complaint for failure to state a claim under Rule 12(b)(6) for the same reasons expressed in *Naylor*.

he should have received more than the Plan provides. The Complaint should therefore be dismissed.

### B.     **Matula's Alleged Harm Is Not Redressable.**

Even if Matula could establish that he has suffered an Article III injury (which he cannot), it is not one that is redressable by a favorable decision. *Lujan*, 504 U.S. at 560–61 (discussing redressability requirement). As discussed, the Plan document *mandates* that, if not used to offset future contributions, forfeitures must be used to pay Plan expenses or make corrective adjustments. Thus, even if the Court concluded that Wells Fargo could not offset its future contribution obligation with the forfeitures and ordered them returned to the Plan, this would not translate into a greater benefit for Matula because Plan participants do not pay for the Plan's expenses and Matula does not seek a "corrective adjustment" to his account. Additionally, for the reasons discussed above, Matula is not entitled to an increase in his Plan account because ERISA limits participants to contractual benefits.

Courts have uniformly held that plaintiffs fail the redressability element of Article III standing where, even if they were to prevail in their ERISA claims and any disgorged funds revert to the plan, there is no requirement that they be used for participants' benefit. *See, e.g.*, *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525–26 (9th Cir. 2023) (affirming dismissal for lack of standing of participants' claims challenging health plan commissions and fees where nothing compelled plan sponsor to use any eventual award for participants' benefit); *Fox*, 20 F. Supp. 3d at 143-44 (dismissing for lack of standing participants' breach of fiduciary duty claim for failure to collect employer

contributions where trustees had discretion over whether to use contributions to grant benefit improvements and thus plaintiffs could not show redressability); *Glanton v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (rejecting plaintiffs' claim that if they won the lawsuit, their plan's drug costs would decrease and the plans might reduce co-payments or contributions as a result and holding that those injuries were not redressable because nothing would require the plan sponsors to reduce the costs of benefits for participants); *David v. Alphin*, 2008 WL 5244504, at *3 (W.D.N.C. Dec. 15, 2008) (holding plaintiffs lacked standing to challenge pension plan's payment of allegedly excessive fees because plaintiffs would only receive greater benefits if the plan sponsor amended the plan to provide additional benefits), *aff'd*, 704 F.3d 327 (4th Cir. 2013).

This reasoning applies even more forcefully here where the Plan *mandates* how forfeitures must be used if they are not used to offset employer contributions and nowhere permits participants to receive forfeitures.

*      *      *

The two courts that have denied motions to dismiss claims involving forfeiture-related claims are inapposite since the plaintiffs in both cases alleged that the plan participants themselves paid for plan expenses out of their accounts and were harmed by the alleged failure to allocate forfeitures to reduce those expenses. *Rodriguez v. Intuit Inc.*, 2024 WL 3755367, at *2 (N.D. Cal. Aug. 12, 2024) (alleging that expenses were paid pro-rata through deductions from participant accounts); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024) (alleging that participants

incurred "an average administrative expense of $44 per year"); *see also Middleton v. Amentum Gov't Servs. Parent Holdings, LLC*, 2024 WL 3826111, at *5–6 (D. Kan. Aug. 14, 2024) (granting leave to amend to advance forfeiture-related claims where participants alleged that they paid excessive plan expenses, but deferring merits issues to subsequent motion to dismiss amended complaint).[7]

In short, because Matula has not alleged any reduction in promised benefits or contributions stemming from any of the conduct alleged in the Complaint, he lacks Article III standing to pursue his claims and the Complaint should be dismissed. If the Court agrees, it need not proceed further.

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE MATULA'S CLAIMS ARE NOT LEGALLY VIABLE.

Even if Matula could establish that he suffered a redressable injury as a result of the allocation of forfeitures to future employer contributions rather than participant benefits—which he cannot—his claims should be dismissed because: (1) they were released in exchange for severance pay; and (2) they are contrary to the Plan's written terms and settled law countenancing the use of forfeitures to fund employer contributions.

### A.    The Complaint Should Be Dismissed Because Matula Released All Of His Claims.

Matula's claims should be dismissed because he released them in June 2023 when he signed his severance agreement upon the termination of his employment. As discussed

---

[7] For the same reason, the court's decision in *Dimou* ruling that plaintiff suffered a redressable injury is inapposite. 2024 WL 4508450, at *1, *3.

above (*see* Background § C), the agreement is expansive and captures any and all claims for additional amounts of money or benefits from Wells Fargo and its affiliates.

"[R]eleases of legal claims in exchange for severance benefits are enforceable under ERISA." *Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 717 (8th Cir. 2001). It is settled law that a general release of "all claims" or "all known and unknown" claims includes an ERISA claim—even if it is not expressly mentioned in the release. *See Stanley v. George Wash. Univ.*, 394 F. Supp. 3d 97, 107-08 (D.D.C. 2019) (ruling that release extending to all federal claims encompassed ERISA claims), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020) (citing and quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372–73 (5th Cir. 2002) ("[A] general release of 'any and all' claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute. ERISA contains no such requirements."); *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1117 (7th Cir. 1990) (ruling that release of "any claim" extended to all ERISA claims)); *Magruder Constr. Co. v. Gali*, 2020 WL 1512478, at *7 (E.D. Mo. Mar. 30, 2020) (ruling that release of "any and all" claims extended to employee's ERISA claims even though ERISA was not mentioned in agreement) (citing *Stanley*, 394 F. Supp. 3d at 107-08 and *Chaplin*, 307 F.3d at 372–73).

Accordingly, the Complaint should be dismissed because Matula released all of the claims asserted in the Complaint.

**B.**    **The Complaint Fails To State A Claim For Breach Of Fiduciary Duty.**

In Count I of the Complaint, Matula alleges that Defendants breached their fiduciary duties of prudence and loyalty by using forfeitures to offset future employer contributions rather than to benefit Plan participants, including by paying for Plan expenses or allocating forfeited funds to participants' accounts. (ECF No. 1, ¶¶ 22, 36–43.) Count I fails because the Complaint does not plausibly allege that Defendants (i) acted as fiduciaries when allocating forfeitures, since the Plan leaves no choice on how to allocate forfeitures; and (ii) breached a fiduciary duty, since the use of forfeited employer contributions to fund future employer contributions is required by the Plan and lawful under longstanding Treasury regulations.

"In every case charging breach of ERISA fiduciary duty, … the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Where an ERISA plan is drafted to mandate a specific course of action, courts have routinely dismissed fiduciary breach claims on the ground that defendants lacked the discretion required for fiduciary status. *See McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) (holding that an investment advisor's adherence to agreement terms did not create fiduciary status); *Useden v. Acker*, 947 F.2d 1563, 1575 (11th Cir. 1991) (rejecting fiduciary breach claim where bank's discretion over plan assets was "circumscribed" by, *inter alia*, promissory note terms).

Here, as discussed, Section 6.5 of the Plan mandates that forfeitures "shall" only be used toward future employer contributions, to pay Plan expenses, or to make

corrective adjustments to participant accounts. Since Wells Fargo paid for Plan expenses and Matula does not contend his account needed adjusting, the Plan required that the forfeitures be used toward future employer contributions. Defendants had no choice to use the forfeitures for any other purpose. Therefore, under the authorities discussed above, Matula's fiduciary breach claim should be dismissed because he has failed to allege that Defendants exercised the requisite discretion to render them fiduciaries with respect to the use of forfeitures.[8]

Even if this Court were to conclude that Defendants were acting as fiduciaries (which it should not), dismissal would still be warranted because the Complaint does not allege a plausible breach. Matula concedes that forfeitures were used to reduce employer contributions, which is exactly what the Plan and ERISA demand. *See* 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciaries to act "in accordance with the documents and instruments governing the plan"). In *Naylor*, the court rejected a fiduciary breach claim like Matula's where the plan similarly mandated that forfeitures be used to reduce employer contributions and defendants acted in accordance with the plan's terms. The court emphasized that there was nothing in the plan that would allow forfeitures to be allocated to individual participant accounts, or to plan expenses in the first instance.

---

[8] Neither of the two district court decisions denying motions to dismiss relating to the use of forfeitures have any bearing here because, in both cases, the plan documents *permitted* the use of forfeitures to reduce plan expenses and, unlike here, participants paid for those expenses. *Rodriguez*, 2024 WL 3755367, at *2; *Perez-Cruet*, 2024 WL 2702207, at *1. Thus, the focus of the courts was whether, given the choice to use forfeitures toward future employer contributions or plan expenses, the plan fiduciaries engaged in a prudent decision-making process in electing to use them toward future contributions.

Thus, by complying with the plan, defendants satisfied their fiduciary obligations. *See also Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (rejecting fiduciary breach claim "[b]ecause Defendants complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms").

Matula's claims reduce to the argument that Defendants were required to violate Section 6.5 and use forfeitures to pay him a windfall. But that is an argument courts have consistently rejected. As the *Naylor* court explained, while ERISA requires fiduciaries to act prudently and for the exclusive purpose of providing benefits to participants, it does not require them to violate plan documents in order to maximize participant benefits. To the contrary, a participant's only right is to the benefits promised under the written plan. *Naylor*, 2024 WL 4112322, at *6 (citing *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989) (holding that ERISA's requirement that the fiduciary "'provid[e] benefits to participants and their beneficiaries' creates no exclusive duty of maximizing pecuniary benefits. Under ERISA the fiduciaries' duties are found largely in the terms of the plan itself"); *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 445–47 (1999)) ("ERISA does not confer substantive rights on employees; rather it ensures that they will receive those benefits that the employers have guaranteed to them.")); *see also Kitterman v. Coventry Health Care of Iowa, Inc.*, 632 F.3d 445, 449 (8th Cir. 2011) (rejecting claim for extra-plan benefits, noting "our role is to assure the plan is fairly administered, not to rewrite plan provisions") (citation omitted); *Gerhardson v. Gopher News Co.*, 2010 WL 3463495, at *10–11 (D. Minn. Aug. 30, 2010) (Tunheim, J.)

(refusing to recognize fiduciary breach claim for failure to "bend the rules in plaintiffs' favor," recognizing that ERISA requires fiduciary to comply with, not override, plan documents); *Hutchins*, 2024 WL 3049456, at *6 ("it is neither disloyal nor imprudent under ERISA to fail to maximize pecuniary benefits.") (citing *Foltz*, 865 F.2d at 373). Matula's claim for increased benefits is foreclosed by this settled legal framework.

Furthermore, the use of forfeited employer contributions to fund future employer contributions cannot give rise to a fiduciary breach because the practice is consistent with longstanding Treasury regulations. For more than a half century (since 1963), Section 1.401-7(a), 26 C.F.R. § 1.401-7(a) of the Treasury regulations has provided that forfeited amounts "must not be applied to increase the benefits any employee would otherwise receive under the plan[,]" but rather "must be used as soon as possible to reduce the employer's contributions under the plan[.]" *Id*. More recently, the Treasury Department reiterated in proposed regulations that forfeitures in defined contribution plans may be used to reduce future employer contributions. Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01 (Feb. 27, 2023) (to be codified at 26 C.F.R. pt. 1).

In *Hutchins*, this regulatory framework provided a sound basis for the court to reject plaintiff's theory that forfeitures must always be used to reduce plan expenses, regardless of a plan's language allowing them to be used to offset employer contributions. 2024 WL 3049456, at *6–7; *see also Dimou*, 2024 WL 4508450, at *9 (same). The court noted that the position was "contrary to the settled understanding of Congress and the Treasury Department regarding defined contribution plans." *Id.* (quotation omitted). And while a fiduciary may have a duty to act prudently and loyally,

21

the court explained, these general fiduciary provisions could not be construed "to not only create a benefit to which Plaintiff is not entitled but also to abrogate Treasury regulations and settled rules regarding the use of forfeitures in defined contribution plans." *Hutchins*, 2024 WL 3049456, at *6. Applying the rationale set forth in *Hutchins* and *Dimou* here, Matula's fiduciary breach claim based on a failure to pay forfeitures to participants should be dismissed.

### C.   The Complaint Fails To State A Claim For Violation Of ERISA's Anti-Inurement Clause.

In Count II, Matula claims that Defendants violated ERISA section 403(c)(1), which precludes plan assets from inuring "to the benefit of any employer" by using the forfeitures to offset future employer contributions. (ECF No. 1, ¶¶ 45, 47.) This claim fails because the forfeitures did not inure to Wells Fargo's benefit, but rather were held in the Plan and used to fund benefits for active Plan participants.[9]

"The purpose of the anti-inurement provision . . . is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004). A violation does not occur where, as here, amounts are used to fund benefits for participants. *Id*. at 22. In fact, in *Naylor*, *Hutchins, and Dimou*, the courts rejected anti-inurement claims identical to Matula's because the forfeited employer contributions were not diverted out of the plan to the employers for purposes

---

[9] For purposes of this motion only, Defendants assume that forfeited employer contributions qualify as "plan assets" under ERISA section 3(21)(A)(i), , 29 U.S.C. § 1002(21)(A)(i).

unrelated to the plan, but rather were reallocated to pay pension benefits to other participants. *See Naylor*, 2024 WL 4112322 at *7; *Hutchins*, 2024 WL 3049456, at *8; *Dimou*, 2024 WL 4508450, at *10.  *See also Maez v. Mountain States Tel. & Tel., Inc*., 54 F.3d 1488, 1506 (10th Cir. 1995) (rejecting anti-inurement claim where surplus assets were not diverted to plan sponsor, but rather used to fund early retirement benefits).

The fact that Wells Fargo may have received an incidental benefit from the forfeitures by virtue of its contribution obligation being reduced is of no moment. In *Hughes Aircraft Co. v. Jacobson*, the Supreme Court held that an employer's receipt of an "incidental" benefit "[does not] constitute improper inurement[.]" 525 U.S. 432, 445–46 (1999). In fact, even prior to *Hughes*, courts held that ERISA's anti-inurement provision "cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective." *Holliday v. Xerox Corp*., 732 F.2d 548, 551 (6th Cir. 1984). The *Hutchins* court applied this reasoning to reject an anti-inurement claim identical to Matula's here. *Hutchins*, 2024 WL 3049456, at *7 ("Allegations of 'indirect' or 'incidental' benefits to an employer are insufficient to state a claim under the anti-inurement provision.") (citing *Krohnengold v. N.Y. Life Ins. Co*., 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022). In the wake of *Hutchins*, both the *Naylor* and *Dimou* courts reached the same conclusion and dismissed the same claim Matula advances here.

Applying the same legal framework to Matula's anti-inurement claim, it should be dismissed because the Complaint does not allege that Plan assets were diverted to Wells

Fargo, but rather concedes that the forfeitures were used to fund benefits. (ECF No. 1, ¶ 21.)

### D.    The Complaint Fails To State A Prohibited Transaction Claim.

In Count III, Matula purports to couch the same use of forfeitures as a violation of ERISA's prohibited transaction provisions. ERISA Section 406(a) states in pertinent part that a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1) (emphasis added). ERISA Section 406(b)(1) forbids "[t]ransactions between plan and fiduciary," where a fiduciary "deal[s] with assets of the plan in his own interest or for his own account." *Id*.

To begin with, and as discussed above, Matula's allegations do not challenge fiduciary conduct and, as such, Matula's prohibited transaction claim cannot survive. *See, e.g.*, 29 U.S.C. § 1106(a)(1) & (b)(1); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (explaining that precursor to prohibited transaction claim is finding of fiduciary status); *Naylor*, 2024 WL 4112322, at *7 (rejecting prohibited transaction claims, noting that "[i]n the absence of a predicate fiduciary act, there is not a basis for concluding there was a prohibited transaction").

Matula's prohibited transaction claim also should be dismissed because he has not identified a "transaction" within the meaning of section 406. In *Lockheed*, the Supreme Court explained that section 406 was meant to reach "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably

not at arm's length." 517 U.S. 882, 893 (1996). By contrast, "[t]he payment of benefits," the Court underscored, "cannot reasonably be said to share that characteristic," even where the employer draws an incidental benefit from such payment. *Id.* at 883. *See also Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan*, 2017 WL 8948732, at *9 (N.D. Cal. Jan. 18, 2017) (ruling that the company's use of funds for a life insurance benefit to fund a pension benefit that would otherwise have been funded by a true-up from the company was not prohibited transaction even if company "save[d] itself from having to make Plan contributions").

In *Hutchins* and *Dimou*, the courts applied *Lockheed*'s teachings to dismiss claims like Matula's here, reasoning that the reallocation of forfeited amounts to provide benefits to other employees is not a prohibited transaction under section 406 because (i) it is not akin to a commercial bargain with a third party; and (ii) does not present a special risk of plan underfunding. *Hutchins*, 2024 WL 3049456, at *9 (citing *Lockheed*, 517 U.S. at 893); *Dimou*, 2024 WL 4508450, at *11 ("An intra-plan transaction, like forfeiture reallocation, is unlike a sale or leasing of property to a third party."); *See also Chao v. Hagemeyer N. Am., Inc*., 2006 WL 8443663, at *6–7 (D.S.C. Oct. 20, 2006) (ruling that separation of ESOP into two plans and concomitant reallocation of shares of employer stock between participants' accounts in exchange for cash was not prohibited transaction but rather "a redistribution within the plan of the plan assets between" participants)). The same result is warranted here.

E.    <u>The Complaint Fails To State A Duty to Monitor Claim</u>.

In Count IV, Matula has alleged that Wells Fargo breached its fiduciary duty by failing to monitor the Human Resources Committee of the Board of Directors and Employee Benefit Review Committee (the "Committees") and allowing them to breach their duties in allocating forfeitures. (ECF No. 1, ¶¶ 56, 58.) This claim should be rejected because, for the reasons explained above, Matula has not alleged a sustainable claim against the Committees (or any Defendant). Claims for breach of the duty to monitor are "derivative" of the underlying fiduciary breach claims and cannot survive if those direct claims are dismissed. *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020) (affirming dismissal of failure to monitor claim where underlying fiduciary breach claims were dismissed). The same outcome is warranted here.

<u>CONCLUSION</u>

For the reasons discussed above, this Court should grant Defendants' motion and dismiss the Complaint without leave to replead.

Dated:    October 18, 2024          Respectfully submitted,

**PROSKAUER ROSE LLP**

By:  *s/ Russell L. Hirschhorn*
Russell L. Hirschhorn (*pro hac vice*)
Deidre A. Grossman (*pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3286
Facsimile: (212) 969-2900
rhirschhorn@proskauer.com
dagrossman@proskauer.com

**FAEGRE DRINKER BIDDLE & REATH LLP**
Jeffrey P. Justman (#0390413)
Kiera K. Murphy (#0401027)
90 S. 7th St., Suite 2200
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
jeff.justman@faegredrinker.com
kiera.murphy@faegredrinker.com

*Attorneys for Defendants*