# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

THOMAS O. MATULA JR., individually
and as representative of a class of
participants and beneficiaries on behalf of
the Wells Fargo & Company 401(k) Plan,

               Plaintiffs,

     v.

WELLS FARGO & COMPANY; HUMAN
RESOURCES COMMITTEE OF THE
BOARD OF DIRECTORS OF WELLS
FARGO; WELLS FARGO EMPLOYEE
BENEFIT REVIEW COMMITTEE; and
DOES 1-10, inclusive,

               Defendants.

Case No. 0:24-cv-03703-JRT-TNL

**MEMORANDUM OF LAW IN <u>OPPOSITION</u> TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

I.     Introduction. ................................................................................................ 1

II.    Factual Allegations. ..................................................................................... 1

    A.  Funding Of Plan. ..................................................................................... 2

    B.  The Plan's Forfeiture Provisions. ........................................................... 2

    C.  Defendant's Use Of Forfeited Funds For Its Own Benefit. ................... 3

    D.  Defendant Charges Expenses To Participants, Including Plaintiff. ........ 3

III.   Plaintiff Has Article III Standing. .............................................................. 4

    A.  Plaintiff Has Suffered Injury For Standing Purposes. ........................... 4

        1.  Standing Based On Injury To The Defined Contribution Plan. .......................... 4

        2.  Standing Based On Injury Through Participants' Payment Of Operating
        Expenses. ....................................................................................... 7

        3.  Standing Based On Injury From The Failure To Allocate Forfeited Funds To
        Participants' Accounts .............................................................. 10

    B.  Plaintiff's Injuries Are Redressable. .................................................... 11

    C.  The Authorities Cited By Defendants In Favor Of Their Standing Argument Are
    Unpersuasive. ..................................................................................... 12

IV.    Plaintiff Has Properly Pled Each Of Her Claims. ................................... 13

    A.  Plaintiff Has Properly Pled Her Breach Of Fiduciary Duty Claim. ..... 13

    B.  Plaintiff Has Properly Pled Her Anti-Inurement Violation Claim. ....... 15

    C.  Plaintiff Has Properly Pled A Claim For Prohibited Transactions. ...... 18

    D.  Plaintiff Has Properly Pled A Claim For Failure To Monitor .............. 20

V.     Defendant's Reliance On Treasury Regulations Lack Merit. ................... 21

VI.    Plaintiff's Claims Are Not Barred By A Release. ................................... 22

VII.   If The Court Is Inclined To Grant This Motion, Plaintiff Requests Leave To
Amend. ....................................................................................................... 24

VIII.  Conclusion. ............................................................................................. 24

TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, (2004) ................................................... 16

*Animal Legal Def. Fund v. Vaught*, 8 F.4th 714 (8th Cir. 2021)........................................... 4

*Arnold v. Paredes*, 714 F. Supp. 3d 962 (M.D. Tenn. 2024) ............................................. 24

*Black v. Greater Bay Bancorp*, 2017 WL 8948732 (N.D. Cal. 2017) ............................... 20

*David v. Alphin*, 2008 WL 5244504, (W.D.N.C. 2008)...................................................... 13

*Delk v. Durham Life Ins. Co.*, 959 F.2d 104 (8th Cir. 1992) ........................................ 9, 10

*Dimou v. Thermo Fisher Scientific*, 2024 WL4508450, (S.D.Cal. 2024) ..................... 9, 18

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) ............... 24

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, (2014) ............................................ 14

*Fox v. McCormick*, 20 F. Supp. 3d 133 (D.D.C. 2013)................................................. 12, 13

*Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, (D. Conn. May 25, 2022) ..... 23

*Glanton v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006) ........................................... 12

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432 (2d Cir.
    2021) ................................................................................................................................ 13

*Hawkins v. Cintas Corp.*, 32 F.4th 625 (6th Cir. 2022) ................................................... 24

*Holliday v. Xerox*, 732 F.2d 548 (6th Cir. 1984).............................................................. 17

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999)................................................. 5, 16

*Hutchins v. HP Inc.*, 2024 WL 3049456, (N.D. Cal. June 17, 2024)........................... 17, 22

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006)........................................... 23

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, (S.D.N.Y. 2017) ............. 23

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ................................................................ 19

*Matousek v. MidAmerican Energy Co.*, 51 F.4th 274 (8th Cir. 2022) ............................... 5

*Missouri v. Yellen*, 39 F.4th 1063 (8th Cir. 2022)............................................................... 4

*Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, (S.D.N.Y. Sept. 5, 2017) ..................................................................................................... 23

*Naylor v. BAE Systems, Inc.*, 2024 WL 412322 (E.D. Va. 2024) .............................. 12, 18

*Nova Health Sys. V. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ............................................ 11

*Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293 (D. Minn. 2021) ............................. 6

*Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D.Cal. 2024) ....................... passim

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) .................................... 7

*Rodriguez v. Intuit, Inc.*, -- F.Supp.3d. --, 2024 WL 3755367 (N.D.Cal. 2024) ........ passim

*Schave v. CentraCare Health Sys.*, 2023 WL 1071606 (D. Minn. 2023) .......................... 7

*Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857 (D. Minn. 2021) .......................... 6

*Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809 (8th Cir. 2024) ...................................... 13

*Solis v. Webb*, 931 F. Supp. 2d 936 (N.D. Cal. 2012) ...................................................... 20

*Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, (D.D.C. 2019) ...................... 22

*Taylor v. United Techs. Corp.*, 2008 WL 2333120, (D. Conn. June 3, 2008) ................. 23

*Thole v. U.S. Bank N.A.,* 590 U.S. 538 (2020) .................................................. 5, 6, 12, 13

*Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996), *on reh'g en banc*, 120 F.3d 1006 (9th Cir. 1997) .............................................................................................. 9, 10

*Winsor v. Sequoia Benefits & Ins. Servs.*, LLC, 62 F.4th 517, (9th Cir. 2023) ............... 12

**Statutes**

26 C.F.R. § 1.401-1(b)(1)(i) ............................................................................................. 21

26 C.F.R. § 1.401-1(b)(1)(ii) ............................................................................................ 21

26 C.F.R. § 1.401-7 ........................................................................................................... 21

26 U.S.C. § 401(a)(8) ........................................................................................................ 21

29 C.F.R. § 2509.75-8 ....................................................................................................... 20

29 U.S.C. § 1002(34) .......................................................................................................... 5

29 U.S.C. § 1103(c)(1) ................................................................................................. 15, 16

29 U.S.C. § 1104(a)(1)(A)(ii) ................................................................................... 13

29 U.S.C. § 1104(a)(1)(B) ......................................................................................... 14

29 U.S.C. § 1104(a)(1)(D) ......................................................................................... 24

29 U.S.C. § 1106(a)(1) ............................................................................................... 18

29 U.S.C. § 1109(a) .............................................................................................. 11, 20

29 U.S.C. §1001(b) ..................................................................................................... 16

**Rules**

Rev. Rul. 71-313, 1971 WL 26693 (1971) ................................................................ 21

**Regulations**

28 Fed. Reg. 10115 (1963) ........................................................................................ 21

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Introduction.**

This action arises out of Defendants' conduct in using forfeited funds from its employees' 401k retirement plan for its own benefit, to reduce its employer matching contributions, instead for the benefit of Plan participants.

Under the Wells Fargo 401k Plan, if an employee leaves Defendants' employment before the vesting period ends, the nonvested portions of their funds are forfeited.  The Plan provides Defendants with "sole discretion" to use these forfeited funds "as a credit against the Base or Matching Contributions . . . by the Participating Employers, to pay expenses of the Plan or to make corrective adjustments to Accounts. . ."  Dkt. 40-2, p. 37 of 372, § 6.5.  Plaintiff alleges that Defendants chose to use forfeited funds to offset their contributions instead of paying expenses or adjusting participants' accounts.

Defendants' argument that Plaintiff lacks standing fails.  The 401k Plan at issue is a defined contribution plan, not a defined benefit plan. In a defined contribution plan, injury to the Plan, provides standing for Plan participants.  The case law cited by Defendants, involving defined benefit plans, is not applicable in a defined contribution plan.  Moreover, Defendants argument it pays all plan expenses is contrary to the record, and its interpretation of the Plan's forfeiture provision is unreasonable.

As set forth herein, Plaintiff has properly stated claims pursuant to the Employee Retirement Security Act ("ERISA") for breach of fiduciary duties, violation of the anti-inurement clause, and prohibited transactions.  Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

**II.    Factual Allegations.**

Plaintiff is a participant in the Wells Fargo & Company 401(K) Plan (the "Plan"), through her employer. Dkt. 1, ¶7.  The Plan is a defined contribution Plan under ERISA. Dkt. 1, ¶8; *see also* Plaintiff's Request for Judicial Notice ("RJN"), Exh. 1, Wells Fargo

Form 5500, 2022, Notes to Financial Statement, p.5 ("the Plan is a defined contribution plan with a 401(k) feature sponsored by Wells Fargo & Company").

### A.    Funding Of Plan.

Employees can elect to having monies withheld from their paycheck to contribute to their 401k Plan. Dkt, 40-2, pp.21-24 of 372, § 4.3.

Wells Fargo is obligated to make annual employer contributions to the Plan on behalf of each eligible participant.  These contributions are denominated in the Plan as Wells Fargo's "Base Contributions" and "Matching Contributions."  *Id*. at pp.4, 12 of 372, §§ 2.5, 2.31.  The Plan states Matching Contribution "shall have a value equal to 100% of the Participant's Salary Deferral Contribution."  *Id*. at p.25 of 372, §5.1(a).  The Plan states Base Contribution "shall have a value equal to one percent (1%) of the Participant's Certified Compensation. . ."  *Id*. at p.26 of 372, §5.2(a).  These employer contributions are due to be paid into the Plan "not later than the due date for the Company's federal income tax return . . . for the Plan Year to which the contributions relate. . ."  *Id*. at p.25-26 of 372, § 5.1(d), 5.2(c).

### B.    The Plan's Forfeiture Provisions.

Employees vest in the employer contributions under the Plan after three years. Dkt. 40-2, pp.16, 18-19, 50 of 372, §§ 2.56, 3.3, 9.2.  If an employee leaves Wells Fargo's employment prior to vesting, the nonvested portions are forfeited.  *Id*. at p. 52 of 372, § 9.2((f).

The forfeiture provision under the Plan provides as follows with respect to handling forfeited Plan assets.

> "Forfeitures arising during a calendar year under the provisions of Sec. 9.2(f), . . . shall be applied not later than the last business day of the year as a credit against the Base or Matching Contributions to be made for the current year by the Participating Employers, to pay expenses of the Plan *or* to make corrective adjustments to Accounts,[1] each as determined by the Plan Administrator *in its sole*

---

[1] "Account" is defined under the Plan to mean "a Participant's, Beneficiary's or Alternate

*discretion* . . .”  Dkt. 40-2, p. 37 of 372, § 6.5.

### C.    Defendant's Use Of Forfeited Funds For Its Own Benefit.

Plaintiff alleges that Defendants exercised their discretion to use forfeited Plan assets for their own benefit, in reducing future employer contributions, rather than for the benefit of Plan participants.  Dkt. 1, ¶21.  Specifically, Plaintiff alleges that Defendants decision to apply forfeitures to reduce employer contributions “benefitted Defendants, but harmed the Plan and participants . . . by reducing Plan assets, not allocating forfeited funds to participants' accounts, and/or by causing participants to incur expenses that could otherwise have been covered in whole or in part by forfeited funds.”  *Id*. at ¶22.

In its Form 5500, Defendants state that for the year 2022, it had 1,433 employee “participants who terminated employment during the plan year with accrued benefits that were less than 100% vested.” RJN, Exh.1, p.2, ¶6.h.  Defendants' Form 5500 for 2022 also states that “[f]orfeitures used to offset employer contributions were approximately $2,020,000 for the year ended December 31, 2022.”  *Id*. (Notes to Financial Statement), p.8.

### D.    Defendant Charges Expenses To Participants, Including Plaintiff.

Documents submitted by Defendants reflect that they charge Plan participants for “operating expenses” associated with the Plan investment funds.  Thus, Defendants' fee disclosure distinguishes between the “fees and expenses you will pay if you invest in an investment option . . .  and [the fees] Wells Fargo currently pays [as] the administrative expenses associated with the 401k Plan. . .” Dkt. 40-10, p. 2of 9, (Introduction).  The fees charged to participants for their fund investment are referred to as “operating expenses.”  Dkt. 40-10, p. 6 of 9, Part II (Fee and Expense Information).  Plaintiff received a monthly statement for her 401k account which explained that  “[r]eturns reflect deduction of fund operating expenses.  Your Plan may also assess administrative

---

Payee's interest in the Trust Fund. . .”  *Id*. at p.4 of 372, §2.1.

fees that would reduce the results shown above." Declaration of Thomas A. Matula ("Matula Decl."), Exh.1.

Defendants fee disclosure also states they charge Plan participants for some of the "administrative fees" associated with the Plan. Dkt. 40-12, p.7 of 8, (General Information).

> "Wells Fargo & Company currently pays all administrative
> expenses to operate the 401(k) Plan, **_except as noted in the table_**
> **_below_**. For example, you are not charged a fee for recordkeeping
> expenses. In addition, the 401(k) Plan does not currently impose
> individual fees associated with the 401(k) Plan, **_other than noted in_**
> **_the table below_**. For example, the 401(k) Plan does not impose a
> fee for you to obtain a distribution or loan from the 401(k) Plan."
> Dkt.40-12, p. 7 of 8 (General Information).

The table lists several administrative expenses for "elected services" associated with the Plan that are charged to Plan participants, including fees for qualified domestic relations order services, and wire and special handling charges. *Id*.

## III.    Plaintiff Has Article III Standing.

Plaintiff has standing to pursue this action. Although it is the plaintiff's burden to establish standing, "the extent of that burden varies depending on the stage of litigation." *Missouri v. Yellen*, 39 F.4th 1063, 1068 (8th Cir. 2022), *cert. denied,* 143 S. Ct. 734 (2023). On a motion to dismiss for lack of standing, a plaintiff is required only to "allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021). To prove standing, a plaintiff should establish an injury-in-fact, causation, and redressability. *Id*.

### A.    Plaintiff Has Suffered Injury For Standing Purposes.

Defendants' argument that Plaintiff has not suffered injury for standing purposes lacks merit. Plaintiff has suffered injury for multiple, alternative reasons.

#### 1.    Standing Based On Injury To The Defined Contribution Plan.

The 401k Plan at issue in this case is a defined contribution plan, where ultimate benefits will fluctuate depending on plan value and performance. A defined contribution

plan is distinct from a defined benefit plan, where the participants' benefits are fixed. Where Defendants' conduct depletes assets of a defined contribution plan, as alleged in this case, participants have standing to prosecute ERISA claims.

A defined contribution plan under ERISA is "an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses." 29 U.S.C. § 1002(34). "[I]t is essential to recognize the difference between defined contribution plans and defined benefit plans." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.,* 590 U.S. 538, 540 (2020). By contrast, in a "defined contribution plan," the "employer's contribution is fixed and," at retirement, "the employee receives whatever level of benefits the amount contributed on his behalf will provide." *Hughes*, 525 U.S. at 439. In other words, "a defined-contribution plan . . . can rise in value over time but includes no fixed payments." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 277 (8th Cir. 2022).

The recent U.S. Supreme Court decision in *Thole* addressed standing requirements for defined benefit plans. *Thole* stated that, in a defined benefit plan, "participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed." *Thole*, *supra*, 590 U.S. at 543. *Thole* explained that "[t]he benefits paid to the participants in a defined-benefit plan are not tied to the value of the plan." *Id*. at 543. *Thole* noted that, because it was a defined benefit plan, the plaintiff lacked standing to pursue injury to the Plan, because win or lose, "the outcome of this suit would not affect [the participants'] future benefit payments." *Id*. at 541. *Thole*, however, contrasted a defined benefit plan with "a defined-contribution plan, such as a 401(k) plan, [where] the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn

5

on the plan fiduciaries' particular investment decisions." *Id*. at 540. *Thole* explicitly highlighted the critical distinction between defined benefit and defined contribution plans, for purposes of standing. "***Of decisive importance*** to this case, the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan." *Thole*, *supra*, 590 U.S. at 540 (emphasis added). *Thole* held in that "participants in a defined-benefit plan are not similarly situated to . . . the participants in a defined-contribution plan." *Id*. at 542. Participants in a defined contribution plan do possess an interest in the Plan, for standing purposes, because "the value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk." *Id*.

Here, Plaintiff alleges and the records reflect that the Wells Fargo Plan is a defined contribution Plan. *See* Dkt. 1, ¶8; and RJN, Exh. 1, Notes to Financial Statement, p.5. Defendants' conduct in using forfeited funds for their benefit depleted Plan assets. Dkt. 1, ¶41. In 2002 alone, $2,020,000 in employer contributions were offset, and not paid into the Plan, because of Defendants' discretionary decision on how to use forfeited funds. This in turn leads to less available for investment and ultimate payment as benefits to participants. This establishes injury in fact for standing purposes.

Many cases since *Thole* have acknowledged that standing continues to exist in defined contribution plans based on injury to the Plan also being an injury to the participant. *See e.g.*, *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 864 (D. Minn. 2021) ("the mismanagement of the assets in those [defined contribution] individual accounts necessarily causes financial harm to the holders of the accounts"); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1301 (D. Minn. 2021) (finding standing in a defined contribution plan because "retirees' benefits in a defined-contribution plan, as here, are 'tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions'"); and *Schave v. CentraCare Health Sys.*,

2023 WL 1071606, at *2 (D. Minn. 2023) ("[h]ere, Schave challenges decisions pertaining to defined-contribution plans. *Thole*, therefore, is inapposite. . . Schave has Article III standing to challenge the investment options under the Plans in this case").

> **2.    Standing Based On Injury Through Participants' Payment Of Operating Expenses.**

Defendants' argument, based on fee disclosure documents submitted with Defendants' motion, that there is no injury-in-fact because "participants do not pay for any Plan administrative expense," Dkt. 38, p. 21 of 35, is both procedurally improper and substantively incorrect.

It is procedurally improper because this assertion of fact, and the fee disclosure documents submitted, are extrinsic to the complaint.  In ruling on a motion to dismiss, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  However, to the extent the Court considers the extrinsic documentary evidence submitted by Defendant, Dkt. 40-9, 40-10, 40-11, 40-12, 40-12, 40-13, it should also consider the 401k statements for Plaintiff's account under the Plan, submitted with these opposition papers.  *See* Matula Decl., Exh. 1.  Consideration of the 401k statement submitted by Plaintiff is proper under Federal Rules of Civil Procedure, Rule 12(d).

Moreover, substantively, the Plan provides Defendants with discretion to to "pay expenses of the Plan."  Dkt. 40-2, §6.5.  Defendants' discretion under Section 6.5 is not limited to paying "administrative costs," which is all that Defendants claim to pay.   Dkt. 38, p. 21 of 35 Indeed, the Plan does not distinguish between administrative expenses or operating expenses, and Defendants' discretion under Section 6.5 to "pay expenses of the Plan" covers both categories of expenses.

With respect to administrative expenses, Defendant's disclosure documents state "Wells Fargo & Company currently pays all administrative expenses to operate the

401(k) Plan, ***except as noted in the table below***.   Dkt.40-12, p. 7 of 8 (General

Information).  The administrative expenses Wells Fargo charges to participants includes

wire and special handling charges, and addressing qualified domestic relations order

services.  *Id*.  Defendant cannot justify this failure to pay expenses on the ground that it

was a participant elected or an individual service.  The Plan language does not limit or

except participant elected expenses from the Plan expenses Defendants are authorized to

cover using forfeitures.  Dkt. 40-2, §6.5.  Defendants do pay for other administrative fees

for participant elected services, like taking a loan or distribution from the 401k.  Dkt.40-

12, p. 7 of 8 (Defendants do "not impose a fee for . . . a distribution or loan from the

401(k) Plan").  Defendants' discretion to "pay expenses of the Plan" includes expenses

related to administration of the Plan for participant's Accounts.

In addition, there are investment fund "operating expenses" that each participant is

charged. Plaintiff received a monthly statement for her 401k account which explained

that  "[r]eturns reflect deduction of fund operating expenses.  Your Plan may also assess

administrative fees that would reduce the results shown above."  Declaration of Thomas

A. Matula ("Matula Decl."), Exh.1.  Defendants' discretion to "pay expenses of the

Plan," Dkt. 40-2, p. 37 of 372, § 6.5, include these operating expenses for the Plan's

investment options.  Indeed, each of the investment funds for which participants were

charged operating expenses are "maintained pursuant to the terms of the Plan," Dkt. 40-2,

p. 11 of 372, § 2.29, and the funds collectively comprise the Trust Fund corpus of the

Plan.  *Id*. at pp. 15, 84 of 372, §§ 2.52 and 11.1.  Thus, the funds are part of the Plan, and

operating expenses for the Plan funds are part of the overall "expenses of the Plan," as

that phrase is used in Section 6.5.

Plaintiff contends Section 6.5 unambiguously gives Defendants discretion to pay

the operating expenses charged to participants.  However, to the extent there is any

ambiguity regarding whether Section 6.5's discretion to "pay expenses of the Plan"

8

extends to operating expenses associated with the Plan's funds, or is limited to administrative expenses, such an ambiguity should be decided in Plaintiff's favor. *Delk v. Durham Life Ins. Co.*, 959 F.2d 104, 105–06 (8th Cir. 1992) (affirming district court's decision to construe ambiguous ERISA plan against the drafter). Nowhere in the Plan do Defendants define the term "expenses of the Plan," as that phrase is used in Section 6.5. If Defendants wanted to limit Section 6.5's discretion to pay only administrative expenses, "'[a]s the drafter of the plan, . . . [they] could easily have accomplished the limitation [they] now urge[] through the use of more explicit language." *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1196 (9th Cir. 1996), *on reh'g en banc*, 120 F.3d 1006 (9th Cir. 1997).

Defendants' failure to pay expenses of the Plan is an additional, alternative reason Plaintiff has suffered injury, and has standing.  In *Dimou v. Thermo Fisher Scientific*, 2024 WL4508450, *3 (S.D.Cal. 2024), the court held that the plaintiff suffered injury for standing purposes where defendants failed to use forfeitures funds to defray expenses, and "the expenses got charged to Plan participants' accounts, resulting in a proportional reduction in Plaintiff's account." *Id*. at *3.  Other cases have also held proper ERISA claims are stated where forfeited assets were misused to benefit fiduciaries instead of paying expenses. *See Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D.Cal. 2024) and *Rodriguez v. Intuit, Inc.*, -- F.Supp.3d. --, 2024 WL 3755367 (N.D.Cal. 2024). Defendant's effort to distinguish *Qualcomm* and *Intuit* lack merit.  Defendants argues that "both cases alleged that plan participants themselves paid for plan expenses."  Dkt. 38, p.23 of 35.  However, in this case, documents show participants paid for operating expenses for the Plan's funds.  Matula Decl., Exh. 1, p.2.  Defendants purported distinction of *Qualcomm* and *Intuit* lacks merit.

### 3. Standing Based On Injury From The Failure To Allocate Forfeited Funds To Participants' Accounts

Plaintiff also has suffered injury for standing purposes because the Plan terms provide Defendants with discretion to use forfeited funds "to make corrective adjustments to *Accounts*" of the participants.  Dkt. 40-2, p. 37 of 372, § 6.5.  This provided Defendants with discretion to allocate the forfeited funds in an equitable manner to each Plan participant's Accounts.  Indeed, "Account" is defined under the Plan to mean "a Participant's, Beneficiary's or Alternate Payee's interest in the Trust Fund. . ." *Id*. at p.4 of 372, §2.1.

Defendants argue in a footnote that "[a] corrective adjustment would be made in the event of an administrative *error* in the allocation of contributions," and cite to section 12.6 of the Plan.  Dkt. 38, p.6 of 35, n.5 (emphasis added).  This wholly lacks merit. Section 12.6 is entitled "correction of errors," and addresses "mathematical and accounting errors," in connection with the "operation and administration of the Plan." Dkt. 40-2, p. 88 of 372, § 12.6.  Section 12.6 ***does not*** reference using forfeitures, Section 6.5, or participants' "Accounts."  Similarly, Section 6.5 does not reference section 12.6, or correcting "errors."  Moreover, forfeitures are not the product of any error.  Rather, they are excess Plan assets that have been forfeited by previously participating employees, who leave prior to expiration of the vesting period.  Section 6.5 provides Defendants with discretion to use forfeitures make any "corrective adjustments to *Accounts*."  Dkt. 40-2, § 6.5.  The definition of "corrective" includes "intended to improve a situation." https://dictionary.cambridge.org/dictionary/english/corrective. Using forfeitures to adjust participants' Accounts by adding forfeited monies meets that definition.  There is no provision in Section 6.5 limiting that discretion by section 12.6 to fixing "mathematical and accounting errors."  Any ambiguity regarding whether Section 6.5's discretion to use forfeited funds "to make corrective adjustments to Accounts" is

10

limited by Section 12.6 should be construed against Defendants, and in favor of Plaintiff and Plan participants. *Delk*, *supra*, 959 F.2d at 105–06; *Vizcaino*, *supra*, 97 F.3d at 1196.

### B.     Plaintiff's Injuries Are Redressable.

Defendant's argument that Plaintiff's injuries are not redressable in this action for standing purposes also lacks merit.

"[I]t must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly." *Id.* (quoting *Nova Health Sys. V. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005). Here, Plaintiffs are seeking to have Defendants restore the forfeited monies they improperly converted to their own use. Her claims are clearly redressable in this action. *Dimou*, *supra*, 2024 WL4508450, *3 ("the allegations [regarding misuse of forfeited Plan funds] . . . suggest that her injury is redressable").

Defendants' argument that "Plan participants do not pay for the Plan's expenses and Matula does not seek a 'corrective adjustment' to his account," Dkt. 38, p.22 of 35, lacks merit for multiple reasons. First, as set forth above, in a defined contribution plan, because the ultimate benefits will be based on Plan performance, participants have an interest in the Plan value. Injury to the Plan is injury to a participant in a defined contribution plan, and can be redressed in this action. *See* 29 U.S.C. §1109(a). Second, as stated above, Defendant is incorrect when it asserts Plaintiff and participants do not pay Plan expenses. As demonstrated by the monthly statement for the 401k accounts, Plan participants, including Plaintiff, are charged for Plan "operating expenses." Matula Decl., Exh. 1, p.5. This issue is also redressable in this action. Finally, Defendants had discretion to allocate forfeited funds "to make corrective adjustments to Accounts" of the participants. Dkt. 40-2, p. 37 of 372, § 6.5. This allowed them to use forfeited funds for Plaintiff's benefit by adding the monies in an equitable way to each participants' accounts. Defendants' failure to do so is also redressable in this action.

**C.      The Authorities Cited By Defendants In Favor Of Their Standing Argument Are Unpersuasive.**

The case cited by Defendants in support of its standing argument, *Naylor v. BAE Systems, Inc.*, 2024 WL 412322 (E.D. Va. 2024), lacks merit.  *Naylor* did not address standing issues.  *Naylor*, *supra*, 2024 WL 412322 at n.11 ("[t]he Court does not reach the standing issue ").  Moreover, *Naylor* was factually distinct.  The basis for the Court's ruling in *Naylor* was that the employer had no discretion over use of forfeited funds, because under the Plan it was mandatory that "forfeitures 'shall' be used to restore the employer contribution[s] . . ."  *Id*. at *4.  This is in stark contrast to this case, where Defendants were not under any mandate, but explicitly had "sole discretion" to use forfeited funds "as a credit against [employer contributions], to pay expenses of the Plan *or* to make corrective adjustments to Accounts."   Dkt. 40-2, p. 37 of 372, § 6.5.

The other cases cited by Defendant are similarly distinguishable or unpersuasive. In *Winsor v. Sequoia Benefits & Ins. Servs.*, LLC, 62 F.4th 517, 525–26 (9th Cir. 2023), the Court addressed a plan, "provides a fixed set of benefits as promised in plan documents." *Id*. at 528.  As previously discussed, this contrasts with a defined contribution plan on an issue of "decisive importance" for purposes of standing issues. *Thole*, *supra*, 590 U.S. at 540.  In a defined contribution plan, participants like Plaintiff have an interest in the value of Plan assets which they would not have in plans with fixed benefits.  Indeed, *Winsor* quoted *Thole* in emphasizing that "the participants in a defined-benefit plan are not similarly situated to the beneficiaries of . . . a defined-contribution plan," for standing purposes.  *Winsor*, *supra*, 62 F.4th at 528 (quoting *Thole*, *supra*). Similarly, the other cases cited by Defendant also ***do not*** address a defined contribution plan, like the Wells Fargo Plan at issue in this case, where benefits are tied to the value of Plan assets.  Dkt. 38, pp.19-20, 22-23 of 35.  *See Fox v. McCormick*, 20 F. Supp. 3d 133, 136 (D.D.C. 2013) (addressing "a multiemployer, defined-benefit, pension plan");

*Glanton v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) (addressing a "prescription drug plan," and holding that there is no standing because any "award to the plans for past overpayments inure to the benefit of participants"); *David v. Alphin*, 2008 WL 5244504, *2 (W.D.N.C. 2008) (addressing "an ERISA defined benefit plan"); *Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 811 (8th Cir. 2024) (addressing "self-funded health insurance plans"); *Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*, 858 F. App'x 432, 433 (2d Cir. 2021) (addressing a "health benefit plan"); *Fox v. McCormick*, 20 F. Supp. 3d 133, 138, 141–42 (D.D.C. 2013). These cases addressing defined benefit plans, not defined contribution plans, are wholly unpersuasive because the distinction is "of decisive importance" for purposes of standing issues. *Thole*, *supra*, 590 U.S. at 540.

For similar reasons, Defendants' argument that Plaintiff "received all benefits due to him," lacks merit. Dkt. 38, p. 21 of 35. That argument simply does not apply to a defined contribution plan, where a Plaintiff suffers injury when the Plan is injured, and Plaintiff's future (undefined) benefits are compromised.

Plaintiff has adequately alleged Article III standing.

## IV. Plaintiff Has Properly Pled Each Of Her Claims.

Each of Plaintiff's causes of action and claims for relief are properly alleged.

### A. Plaintiff Has Properly Pled Her Breach Of Fiduciary Duty Claim.

Plaintiff properly alleges Defendants breached their fiduciary duty to Plaintiff on multiple grounds under ERISA.

Under ERISA, Defendants have a fiduciary duty to "provide benefits to participants. . . and . . . defray reasonable expenses of administering the plan," 29 U.S.C. § 1104(a)(1)(A)(ii). The Plan provides Defendants with discretion to use forfeited funds "to pay expenses of the Plan *or* to make corrective adjustments to Accounts." Dkt. 40-2, p. 37 of 372, § 6.5. Plaintiff alleges Defendants consistently declined to use any

forfeitures for such purposes, and instead chose to benefit itself by offsetting employer contributions. These claims properly allege a breach of fiduciary duty of loyalty under Section 1104(a)(1)(A). *See Qualcomm*, *supra*, 2024 WL 2702207 at *2 ("Plaintiff plausibly claims that the Defendants breached their fiduciary duty to Plan participants by making a choice that put the employer's interests above the interests of the Plan participants"); and *Intuit*, *supra*, 2024 WL 3755367 at *5 ("the complaint plausibly alleges that Intuit acted in contravention of ERISA's mandate to provide benefits solely in the interest of participants and beneficiaries when it chose to use forfeitures to reduce its own contributions during the class period").

Based on the same facts, Plaintiff also adequately alleges a claim that Defendants breached their duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . ." 29 U.S.C. § 1104(a)(1)(B). Plaintiff's claim that Defendants misuse of forfeited assets for their own benefit, instead of for Plan participants, states a claim for breach of the fiduciary duty of prudence under ERISA. *Qualcomm*, *supra*, 2024 WL 2702207 at *3 ("Plaintiff has articulated a plausible claim of a breach of the duty of prudence by Defendants"); and *Intuit*, *supra*, 2024 WL 3755367 at *6 ("[t]he complaint alleges that the defendants breached the duty of prudence").

Moreover, even if, as Defendants contend, Plan documents mandated that Defendants use forfeited funds to offset future employer contributions (and the Plan does not so mandate, rather it gives discretion), Defendants nevertheless breached their fiduciary duty. Fiduciaries are only permitted to follow Plan documents "insofar as such documents and instruments are consistent with" ERISA statutes. 29 U.S.C. § 1104(a)(1)(D). This is because an ERISA's fiduciary duties "trump the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). Thus, Plan provisions "alone would not excuse [Defendants] from fulfilling its fiduciary duties

under ERISA." *Intuit*, *supra*, 2024 WL 3755367 at *6; *see also Qualcomm*, *supra*, 2024 WL 2702207 at *1 (upholding claim that "Defendants' fiduciary duties under ERISA leave only one choice: defray administrative expenses").  Here, Plaintiff has properly alleged Defendants' use of forfeitures for their own benefit violated ERISA's anti-inurement and prohibited transaction provisions.  (*See* Sections IV.B and IV.C, *infra*.)  It is a breach of fiduciary duty to violate ERISA, even where Plan terms so provide.

Plaintiff has plausibly stated a claim that Defendants violated their fiduciary duty.

**B.   Plaintiff Has Properly Pled Her Anti-Inurement Violation Claim.**

Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

Here, forfeited funds are Plan assets. Indeed, under the Plan terms, the employer contributions that are forfeited are all part of the same fund.  Dkt. 40-2, p. 15 of §§ 2.52. Defendants do not challenge the conclusion that forfeited funds are Plan assets.  Dkt. 38, p. 30 of 35, n.22.

Because forfeitures are Plan assets, they cannot be used to "inure to the benefit" of Defendants. Where plan fiduciaries use forfeitures to reduce their "own financial burden to make contributions in the future," courts have held "it is easy to come to the conclusion" a "benefit" inured in their favor. *Qualcomm*, *supra*, 2024 WL 2702207 at *6; see also *Intuit*, *supra*, at *8 (plaintiff "has plausibly stated a claim for unlawful employer inurement")

Here, by using Plan assets, the forfeited amounts, to offset and reduce future employer contributions, Defendants' debt obligation to the Plan was reduced.  In 2022 alone, that reduction in the amount of employer contributions, and the resulting loss to the Plan, was $2,020,000. RJN, Exh.1, Defendants' 2022 Form 5500, Notes to Financial

Statement, p.8.  An allegation that the employer "received a benefit amounting to 'millions of dollars in contribution expenses'" plausibly states an anti-inurement claim. *Intuit*, *supra*, 2024 WL 3755367, at *8.  Indeed, using forfeited assets to offset what is essentially a debt obligation the employer owes (in the form of employer contribution obligations) is a benefit that inures in favor of Defendants. *Qualcomm*, *supra*, at *6.

Defendants argue that if forfeited assets did not leave the Plan, but were merely "reallocated" to reduce future employer contributions, there can be no anti-inurement claim under ERISA.  Dkt. 38, pp.22-23.   However, the test is whether Plan assets have been used to "inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1). This provision is to be interpreted broadly to implement ERISA's purpose "to protect . . . the interests of participants in employee benefit plans." 29 U.S.C. §1001(b). The statutory focus is on whether a benefit inures to Defendants; not on whether assets leave the Plan. Moreover, labelling the use of forfeitures to offset future employer contributions as a "reallocation" would improperly "elevate form over substance and allow parties to evade" ERISA requirements. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, (2004).  If Plan assets (in this case, forfeited funds) inure to the benefit of the employer, it violates ERISA's anti-inurement provision.

Defendants' argument that it only received an "incidental benefit from the forfeitures," Dkt. 38, p. 31 of 35, lacks merit.  Here, for 2022, the forfeited offsets relieved Wells Fargo of paying $2,020,000 in employer contributions.  RJN, Exh.1, Defendants' 2022 Form 5500, Notes to Financial Statement, p.8.  The $2,020,000 in forfeited Plan assets that was used to offset Defendants' employer contributions in 2022 was a direct dollar-for-dollar benefit to Defendants.  This is not an incidental benefit.  In *Intuit*, the court agreed that "debt forgiveness" which amounts "to 'millions of dollars in contribution expenses,'" does create "a 'direct and greater-than-incidental benefit'" to the employer. *Intuit*, *supra*, 2024 WL 3755367, at *8.

16

The cases cited by Defendant are inapposite and do not support its position. In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), the employer used the surplus assets in an overfunded defined benefit plan to fund a new noncontributory benefits structure. *Id*. at 442. The *Hughes* Court emphasized that the employer had not done what defendants did here, using plan assets to satisfy its debt obligation to the plan. *Id*. (plaintiffs did "not allege that Hughes used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries"). Indeed, *Inuit* distinguished *Hughes* on the ground that, as in this case, "the plaintiff here does allege that the Company used 'assets for a purpose other than to pay its obligations to the Plan's beneficiaries.'" *Intuit*, *supra*, 2024 WL 3755367, at *8 (italics in original). *See also Qualcomm*, *supra*, 2024 WL 2702207 at *4 ("Hughes is distinguishable in that it considered a defined benefit plan . . . [not a] defined contribution plan [where] members have a right to contributions"). In *Holliday v. Xerox*, 732 F.2d 548 (6th Cir. 1984), the employer established an additional benefit program to ensure that employees' annual pension payments were brought up to at least a "minimum pension floor." Id. at 549. The annuity payments were not used to forgive the employer's debt, but to calculate the "net increase" in contributions necessary to fund an additional benefit. *Id*. at 551.  Neither of these cases address use forfeited Plan assets to decrease the employer's debt to the Plan.

Defendants also cite *Naylor*, *Hutchins*, and *Dimou* as rejecting anti-inurement claims.  Dkt 38, p. 30 of 35.  However, these cases are distinct and/or unpersuasive. Thus, *Hutchins* concluded the future employer contribution obligation was not equivalent to a debt, and was only an incidental benefit because "plaintiff has not alleged HP owes any outstanding or unpaid amounts." *Hutchins v. HP Inc.*, 2024 WL 3049456 at *9, (N.D. Cal. June 17, 2024).  However, *Hutchin's* statement that there was no "outstanding" debt obligation assumes that forfeitures were appropriately used to offset employer contributions.  As set forth in *Qualcomm* and *Intuit*, forfeited funds are Plan assets, and

17

under Section 1103(c)(1), these forfeited plan assets cannot inure to the benefit of the employer.  If forfeited Plan assets could be used to satisfy future debts to the Plan, no such debt would be outstanding. Moreover, the issue of whether a debt is outstanding has no basis in the statutory text of ERISA's anti-inurement provision, which exclusively focuses on whether a benefit is inured to the employer.  *Intuit* and *Qualcomm*'s analysis is more persuasive than *Hutchins*' analysis.  *Dimou* primarily cited *Hutchins* for its holding, and did not address of attempt to distinguish either *Qualcomm* or *Intuit*.  *Dimou v. Thermo-Fisher* 2024 WL4508450, *10 (S.D.Cal. 2024).  *Naylor* is distinguishable because the Plan at issue there mandated using forfeitures to offset employer contributions.  *Naylor*, *supra*, 2024 WL 412322 at *4.  *Naylor* concluded that "because Plaintiff has not established that following such Plan terms is itself a fiduciary violation, Plaintiff similarly cannot establish that Plan assets 'inure[d] to the benefit of any employer'. . ."  *Id*. at *7.  This is a questionable conclusion, as liability under ERISA's anti-inurement statute is separate and independent from liability under ERISA's fiduciary duty statute.  *Compare* 29 U.S.C. §§ 1103(c) and 1104.  *Naylor* also did not address or attempt to distinguish the holdings in *Qualcomm* or *Intuit* regarding the anti-inurement violation.

Plaintiff has properly pled an anti-inurement claim based on Defendants' misuse of forfeited funds.

### C.    Plaintiff Has Properly Pled A Claim For Prohibited Transactions.

Plaintiff has properly stated a claim for prohibited transactions under ERISA Sections 1106(a)(1) and 1106(b). 29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of party in interest, of any assets of the plan."

18

Plaintiff's claim that Defendants exchanged forfeited Plan assets, for future employer contributions, states a claim for violation of Section 1106(a)(1). *Intuit*, *supra*, 2024 WL 3755367, at *10 (the "reallocation of undisputed plan assets to reduce its own matching contribution . . . was a 'use' of plan asserts for the purposes of § 1106(a)); and *Qualcomm*, *supra*, 2024 WL 2702207 at *6 (the § 1106(a) claim is supported by "the plain meaning of the statutory language").

In addition, 29 U.S.C. § 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account." Plaintiff's allegations that Defendant's used forfeited plan assets to offset Defendants' employer contribution debt states a claim under Section 1106(b)(1). *Intuit*, *supra*, 2024 WL 3755367, at *10 (reallocation of forfeited Plan assets to offset employer contributions is "'dealing with' plan assets for the purposes of § 1106(b)(1)"); and *Qualcomm*, *supra*, 2024 WL 2702207 at *6.

Defendant's argument that Plaintiff does not allege the involvement of a fiduciary in a prohibited transaction, Dkt. 38, p. 32 of 35, has no merit. Plaintiff alleges Defendants are fiduciaries under ERISA. Dkt. 1, ¶ 13. This allegation is supported by the Plan provisions, which define Defendant Wells Fargo & Company as "Company" in the Plan, and its employees as Plan Administrator. Dkt, 40-2, pp.9, 12 of 372, § 2.13, 2.37. Defendant Employee Benefit Review Committee is "the committee designated under the Plan to exercise authority with respect to the Plan. . ." *Id.* at p.10 of 372, § 2.20. Defendants Wells Fargo & Company and Employee Benefit Review Committee are named fiduciaries under the Plan. *Id.* at p.12 of 372, § 2.32.

Defendants' citation to *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), lacks merit. In Lockheed, the plain tiff claimed that an employer's "early retirement programs were prohibited transactions . . . because the required release of employment-related claims by participants . . ." *Id*. at *893. *Lockheed* rejected that conclusion, holding that "the

payment of benefits conditioned on performance by plan participants cannot reasonably be said to" be a transaction. *Id.*   *Lockheed* did not involve a transaction in Plan assets, and has limited bearing on this case.  Here, Plan assets were transacted (or reallocated) to reduce an employer contribution to the Plan by millions of dollars. Indeed, *Intuit* explicitly distinguished *Lockheed*, holding that, "unlike *Lockheed*, where the alleged benefit to the employer was distinct and unrelated to any financial risk to the plan itself, Ms. Rodriguez has plausibly alleged that Intuit's reallocation of plan assets 'reduced the funds available to participants for distribution and/or investing, a direct threat to the Plan itself." *Intuit*, *supra*, 2024 WL 3755367 at *10.  In this case, like in *Intuit*, but unlike *Lockheed*, Plaintiff alleges that Defendants' use of forfeitures "reduc[ed] Plan assets," by over $2 million in 2022 alone.  Dkt. 1, ¶¶ 20, 22.  Because this reduces funds available to the Plan for investing or distributing, just as in *Intuit*, it is a threat to the Plan, and an actionable prohibited transaction.

Defendants also cite to *Black v. Greater Bay Bancorp*, 2017 WL 8948732 (N.D. Cal. 2017), Dkt. 38, p.33 of 35, but that case involved "a claim for benefits recast in another form," and did not involve a self-dealing transaction that benefitted the employer. *Id*. at *8. It has no relevance here.

Pursuant to 29 U.S.C. § 1109(a), Defendants are liable for the Plan losses resulting from the prohibited transactions.

### D.    Plaintiff Has Properly Pled A Claim For Failure To Monitor.

Under the terms of the Plan, the Plan Administrator is Wells Fargo's employee. *See* Dkt. 40-2, §§2.13, 2.37. As such, Wells Fargo has a duty to monitor the Plan Administrator. *See Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012) ("Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their performance.") (emphasis in original). This required Wells Fargo "to ensure that" the Plan Administrator complied "with the terms of the plan *and statutory standards*." 29 C.F.R. § 2509.75-8, at

FR–17 (emphasis added).

Plaintiff has adequately alleged that Defendants committed numerous plausible violations of ERISA when allocating forfeitures to reduce their contributions to the Plan rather than to defray the Plan's expenses charged to participants or make adjustments to participants' accounts. Accordingly, Plaintiff has also adequately alleged a plausible breach of Wells Fargo's duty to monitor the Plan Administrator. *See Perez-Cruet*, *supra*, 2024 WL 2702207, at *7 ("Plaintiff's derivative claim that Defendants violated the duty to monitor also states a plausible claim for relief").

## V.     Defendant's Reliance On Treasury Regulations Lack Merit.

Defendants' citation to Treasury Regulation 26 C.F.R. § 1.401-7(a), Dkt. 38, p.29 of 35, lacks merit. Section 1401-7(a) and the Code provision it construes, 26 U.S.C. § 401(a)(8), do not apply to profit sharing defined contribution plans.

Section 401(a) of the Internal Revenue Code sets forth the requirements for three types of plans, "stock bonus, pension, or profit-sharing plan," to be a tax exempt "qualified trust." 26 U.S.C. § 401(a)(8) (emphasis added). In 1963, the IRS promulgated 26 C.F.R. § 1.401-7. See 28 Fed. Reg. 10115 (1963). As with the statutory provision it construes, that regulation does not purport to apply to a "profit-sharing plan." Instead, it is expressly limited to a "pension plan." See 26 C.F.R. § 1.401-7(a). The IRS regulations state that "[a] pension plan within the meaning of section 401(a)" – and as used in regulation § 1.401-7 – is a plan that provides for "the payment of definitely determinable benefits" (i.e., a defined benefit plan). 26 C.F.R. § 1.401-1(b)(1)(i) (emphasis added). A "profit-sharing plan," by contrast, is a plan that provides for "a definite predetermined formula for allocating the contributions to the plan" (i.e., a defined contribution plan). 26 C.F.R. § 1.401-1(b)(1)(ii) (emphasis added). It has always been clear that the requirements of "[s]ection 401(a)(8) of the Code and section 1.401-7 of the Income Tax Regulations" do "not extend to profit-sharing … plans." Rev. Rul. 71-313, 1971 WL

26693 (1971).  Multiple courts have rejected Defendant's contention that the Treasury regulations provide a defense to using forfeited Plan assets for the employer's benefit, finding the "arguments lack merit." *Intuit*, *supra*, 2024 WL 3755367, at \*8; *see also Hutchins v. HP, Inc.*, 2024 WL 3049456, \*4 (N.D.Cal. 2024) ("Plaintiff is correct that 26 C.F.R. § 1.401-7(a) does not apply to the Plan").

## VI.    Plaintiff's Claims Are Not Barred By A Release.

Defendants' argument that Plaintiff's claims were released is misplaced. Dkt. 38, page 10.

First, the "Agreement and Release of Claims" ("Agreement") relates to Plaintiff's termination from employment and severance pay and benefits. Dkt. 39-2, page 2. The Agreement expressly defines the scope of the release, excluding any 401K benefit plan. Thus, the release explicitly provides it "does not extend to claims, which as a matter of law cannot be waived, including but not limited to, …claims for your vested interest in any employee benefit plan maintained by the Company…" *Id.*at 3.

Secondly, the same Agreement defines the "Release of Claims": "…you hereby release the Company from all claims, liabilities, demands, and causes of action… as a result of your employment with or separation from employment…" *Id.*, without referencing to ERISA claims. This clearly indicates the parties' intention to exclude ERISA claims from the Agreement.

Plaintiff has worked for Wells Fargo and at all relevant times was enrolled in and participating in the 401k Plan with vested interest and any contribution that should have been made by the defendants as alleged in the complaint, constitutes Plaintiff's vested interest, which falls under an exclusion as provided by the Agreement.

In support of their argument, Defendants cite and rely on out of circuit authorities, neither of which is binding on this Court. Moreover, the cases are distinguishable and are not applicable to our current case.  In *Stanley v. George Washington Univ.*, 394 F. Supp.

3d 97, 107 (D.D.C. 2019), the named plaintiff signed a release of "**any and all claims**"
alleging violations of "**any federal ... statute**" and excluding "claims for vested benefits
under employee benefits plans." *Stanley*, at 107. The court determined that she had
released her ERISA claims and that derivative claims for breach of fiduciary duty under
section 502(a)(2) did not fall within the exception for "claims for vested benefits under
employee benefits plans." *Id*. at 108.

However, the language of the agreement that we have here is different, which
reads as follows:

> "…claims for discrimination or harassment based on age, sex,
> race, color, religion, pregnancy, marital status, national
> origin, sexual orientation, gender identity, gender expression,
> genetic information, or disability arising under federal, state,
> local, or common law…"
> Dkt. 39-2, page 3

The Agreement only waives claims as to Federal Law for discrimination or
harassment and does not include expressive language such as "any federal statute".
Moreover, even if giving credit to *Stanley* decision, many Court declined to adopt and
questioned that opinion. For example, the Court in *Garthwait v. Eversource Energy Co.*,
2022 WL 1657469, (D. Conn. 2022) said the *Stanley* court did not discuss whether the
plaintiff could release her right to sue in a derivative capacity for harm to the Plan under
section 502(a)(2). and that the majority of district courts in the Second Circuit concluded
that a Plaintiff does not release his right to bring the section 502(a)(2) claims. *Garthwait
supra*, at *14; *see also, In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006)
(holding that "under ERISA, individuals do not have the authority to release a defined
contribution plan's right to recover for breaches of fiduciary duty."), *Taylor v. United
Techs. Corp.*, 2008 WL 2333120, at *4 (D. Conn. June 3, 2008) (ruling "ample case law
holds that the signing of releases does not affect typicality where ERISA claims allege
damage to the Plan as a whole rather than to individuals"), *Leber v. Citigroup 401(k)
Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) ("the consent of the plan is

required for a release of [ERISA § 502(a)(2)] claims."), *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *6 (S.D.N.Y. Sept. 5, 2017) (holding that because the plaintiffs seek to bring this suit on behalf of the Plan in a derivative capacity, Gray cannot have unilaterally released his right—or the Plan's right—to sue under section 502(a)(2) for breach of fiduciary duty harming the Plan).

This position is shared by other federal appellate district and circuit courts. *See Arnold v. Paredes*, 714 F. Supp. 3d 962, 974 (M.D. Tenn. 2024) ("Plaintiffs did not have the power to individually waive claims owned by the Plan in their separation agreements."), *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632–33 (6th Cir. 2022) (suggesting that the claim really "belongs" to the Plan.)

Therefore, Plaintiff did not and could not release the ERISA claims at issue.

## VII.   If The Court Is Inclined To Grant This Motion, Plaintiff Requests Leave To Amend.

With respect to any claim for which the motion to dismiss is granted, Plaintiff respectfully requests leave to amend in order to cure any defects. FRCP 15(a) expressly states leave to amend "shall be freely given when justice so requires."  This includes, to the extent needed, to clarify a claim that Defendants violated their fiduciary duty under 29 U.S.C. § 1104(a)(1)(D) by violating plan terms in offsetting forfeitures against Matching Contributions, despite the lack of discretion to do so in the forfeiture clause.

## VIII.  Conclusion.

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny this motion.

Dated: November 22, 2024

Respectfully submitted,

**HAFFNER LAW PC**

By: */s/ Vahan Mikayelyan*
Joshua H. Haffner (SBN 188652) (*Pro Hac Vice*)
Alfredo Torrijos* (SBN 222458)
Vahan Mikayelyan (SBN 337023) (*Pro Hac Vice*)
15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Telephone: (213) 514-5681
Facsimile: (213) 514-5682
Email: jhh@haffnerlawyers.com
Email: at@haffnerlawyers.com
Email: vh@haffnerlawyers

**NOLAN, THOMPSON, LEIGHTON &
TATARYN, PLC**
Rob Leighton (SBN 220735)
1011 1st Street South, Suite 410
Hopkins, MN  55343
Direct Dial:  952-405-7177
Phone: 952-405-7171
Fax:  952-224-0647
Email: rleighton@nmtlaw.com

*Attorneys for Plaintiff*

* *To be admitted Pro Hac Vice*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Tomas Matula certifies that this brief contains 7824 words, which complies with the word limit of L.R. 7.1(f) & L.R. 7.1(h).

Executed on November 22, 2024.

By: _/s/ Vahan Mikayelyan_
Vahan Mikayelyan

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 22, 2024.


By: */s/ Vahan Mikayelyan*
Vahan Mikayelyan