UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

THOMAS O. MATULA, JR.,

                              Plaintiff,

v.

WELLS FARGO & COMPANY, HUMAN
RESOURCES COMMITTEE OF THE BOARD
OF DIRECTORS OF WELLS FARGO, and
WELLS FARGO EMPLOYEE BENEFIT
REVIEW COMMITTEE,

                              Defendants.

Civil No. 24-3703 (JRT/DJF)

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS**

---

Alfredo Torrijos, Joshua Haffner, and Vahan Mikayelyan, **HAFFNER LAW PC**, 15260 Ventura Boulevard, Suite 1520, Sherman Oaks, CA 91403; Robert J. Leighton, Jr., **NOLAN, THOMPSON, LEIGHTON & TATARYN, PLC**, 1011 First Street South, Suite 410, Hopkins, MN 55343, for Plaintiff.

Deidre A. Grossman and Russell Laurence Hirschhorn, **PROSKAUER ROSE LLP**, 11 Times Square, New York, NY 10036; Jeffrey P. Justman and Kiera Murphy, **FAEGRE DRINKER BIDDLE & REATH LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for Defendants.

Plaintiff Thomas O. Matula, Jr. brings this action individually and on behalf of a class of participants and beneficiaries of the Wells Fargo & Company 401(k) Plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Matula alleges that Defendants Wells Fargo & Company, Human Resources Committee of the Board of Directors of Wells Fargo, and Wells Fargo Employee Benefit Review Committee (collectively "Wells Fargo") illegally forfeited funds from employees' 401(k) retirement

plan by reducing future employer matching contributions instead of allocating the funds to benefit plan participants. Wells Fargo moves to dismiss for lack of Article III standing and failure to state a claim. Because Matula lacks Article III standing, the Court will grant the motion to dismiss.

## BACKGROUND

### I.   FACTS

Plaintiff Thomas O. Matula, Jr. brings this ERISA action individually and on behalf of a class of participants and beneficiaries of the Wells Fargo & Company 401(k) Plan ("Plan"). (Compl. at 1, June 11, 2024, Docket No. 1.) Matula was previously employed by Wells Fargo and was a participant in the Plan. (*Id.* ¶ 7.)

The Plan is a contribution benefit plan governed by ERISA and funded by a combination of participant wage withholdings and employer contributions. (*Id.* ¶¶ 8, 17.) Assets of the Plan are held in a trust fund. (*Id.* ¶ 16.) Once contributions are deposited into the trust fund, they become assets of the Plan. (*Id.* ¶ 17.) Matula alleges that Defendants are fiduciaries of the Plan and exercised discretionary authority and/or control over the management and/or distribution of the Plan. (*Id.* ¶ 13.)

Participant contributions to the Plan immediately vest, while employer contributions vest after the participant has performed three years of service. (*Id.* ¶ 18.) Plan participants who terminate employment or become disabled are entitled to the distribution of their total vested account balance. (*Id.* ¶ 20.) However, Plan participants who have a break in service before employer contributions to their accounts have vested

forfeit the balance of any unvested funds, leaving it up to Wells Fargo to decide how those Plan assets will be allocated. (*Id.* ¶ 19.)

The Plan provides three ways in which forfeited funds can be used. In particular, Section 6.5 of the Plan instructs:

> Forfeitures . . . which have not previously been applied to reinstate Accounts . . . shall be applied . . . as a credit against the Base or Matching Contributions to be made for the current year by the Participating Employers, to pay expenses of the Plan or to make corrective adjustments to Accounts, each as determined by the Plan Administrator in its sole discretion.

(Decl. of Sharon C. Hogg ("Hogg Decl.") ¶ 3, Ex. A ("Plan") § 6.5, Oct. 18, 2024, Docket No. 40.) In other words, forfeited funds can be used to "reduce future employer contributions, pay plan administrative expenses, or make corrective adjustments to participants' accounts." (Compl. ¶ 20.) Notably, the Plan incurs expenses in its administration, such as recordkeeping, accounting, and legal expenses. (Hogg Decl. ¶ 5, Ex. H at 2.) Wells Fargo pays such expenses under the terms of the Plan. (*Id.*) In addition, the Plan provides that mathematical or accounting errors may be corrected "as the Plan Administrator in its discretion considers appropriate." (Plan § 12.6.)

In the Complaint, Matula alleges that Wells Fargo "wrongfully and consistently used forfeited nonvested plan assets for its own benefit, to reduce future employer contributions, rather than for the benefit of Plan participants." (Compl. ¶ 21.) Matula alleges that $2,020,000 in employer contributions were allegedly offset and not paid into

-3-

the Plan in 2022.  (*Id.* ¶ 20.)  While using the forfeited funds benefited Wells Fargo, it harmed the Plan and Plan participants "by reducing Plan assets, not allocating forfeited funds to participants' accounts, and/or by causing participants to incur expenses that could otherwise have been covered in whole or in part by forfeited funds."  (*Id.* ¶ 22.)  In using forfeited funds to reduce future employer contributions, Matula alleges Wells Fargo "placed its own interests above the interests of the Plan and its participants."  (*Id.* ¶ 23.)

Matula brings claims for breach of fiduciary duty, breach of ERISA's anti-inurement provision, breach of ERISA's prohibited transactions provision, and failure to monitor fiduciaries.  (*Id.* ¶¶ 37–43, 45–48, 50–54, 56–59.)  Matula seeks damages for Wells Fargo's alleged misuse of forfeited funds.  (*Id.* ¶ 3.)

## II.    PROCEDURAL HISTORY

Matula originally filed this action in the Northern District of California.  (*See generally* Compl.)  The case was transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a) because of a provision in the Plan stating that all "controversies, disputes, and claims arising hereunder shall be submitted to the [District of Minnesota]."  (Order Granting Stip. to Transfer Venue, Sept. 18, 2024, Docket No. 20.)  Wells Fargo subsequently filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Defs.' Mot. Dismiss, Oct. 18, 2024, Docket No. 37.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction, including for lack of standing, and requires the Court to examine whether it has authority to decide the claims. *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). The party seeking to invoke a federal court's subject matter jurisdiction bears the burden of showing that the Court has jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). The Court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Wells Fargo advances a facial attack. (Defs.' Mem. Supp. Mot. Dismiss at 12, Oct. 18, 2024, Docket No. 38.) In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted). The Court accepts as true all facts alleged in the Complaint, construing all reasonable inferences in the plaintiff's favor. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). The Court may consider "the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Id.* (quoting *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012)).

**II.    ANALYSIS**

Wells Fargo challenges the Court's subject matter jurisdiction, arguing that Matula lacks Article III standing to assert his claims. In particular, Wells Fargo argues Matula has not alleged any injury in fact, let alone an injury that is redressable by a favorable decision.

To satisfy Article III standing requirements, a plaintiff must show (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Matula bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Whether Matula has alleged Article III standing requires the Court to interpret the Plan's terms. Matula alleges he has standing because he was injured by Wells Fargo when it failed to use forfeited funds to (1) pay optional services and operating expenses and/or (2) make extra payments to his account through corrective adjustments. Neither theory has merit here.

First, the Plan does not require Wells Fargo to pay optional services and operating expenses. While it is true that the Plan authorizes the use of forfeited funds "to pay expenses of the Plan," expenses in this context refer to the necessary administrative expenses of the Plan, not the optional and investment expenses for which Matula is advocating. (Plan § 6.5; *see also* Compl. ¶ 20 (alleging that the forfeited funds can be used to "pay plan **administrative expenses**") (emphasis added).) The U.S. Department of

Labor explains that 401(k) plan fees generally fall into three categories: (1) Plan administration fees, which include "expenses for basic and necessary administrative services, such as plan recordkeeping, accounting, legal, and trustee services," (2) Investment fees "associated with managing plan investments," which participants pay for directly from their investment returns, and (3) Individual service fees, which are "associated with optional features" and "charged separately to the accounts of participants who choose to take advantage of a particular plan feature."[1] *See also Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) (distinguishing between administrative fees and investment-management fees).  Here, Wells Fargo pays all the administrative expenses of the Plan, except for optional "Participant Elected Services," e.g., qualified domestic relations order services and special handling charges as well as operating expenses that participants are charged based on their investment decisions. (Hogg Decl. ¶ 8, Ex. K at 7; Decl. of Thomas O. Matula ¶ 3, Ex. 1 at 8, Nov. 22, 2024, Docket No. 47 ("Returns reflect deduction of fund operating expenses.  Your Plan may also assess administrative fees which would reduce the results shown above.").)  Despite Matula's well-taken claim that Wells Fargo could have used forfeited funds to pay for optional services and operating expenses, as well as necessary administrative expenses, the Plan's terms do not provide such an authorization.  A plain reading of the Plan indicates that the

---

[1] U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* at 3 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/401k-plan-fees.pdf [https://perma.cc/KH65-56VY].

optional services and operating fees are not included in the expenses for which the forfeited funds can be used to pay. (*See* Plan § 8.9(d) (providing that fees for an investment adviser or management program are charged to participants' accounts).) Rather, the expenses refer to necessary administrative ones.

Because the Plan does not authorize Wells Fargo to use forfeited funds to pay optional services and operating expenses, Matula cannot have been injured by Wells Fargo's alleged failure to use forfeited funds to pay for such expenses and thus has no Article III standing.

Second, Wells Fargo did not injure Matula by failing to make extra payments to his account through corrective adjustments because the Plan does not authorize such action. The Plan authorizes the use of forfeited funds "to make corrective adjustments to Accounts." (Plan § 6.5.) But that does not mean forfeited funds can be used to make extra payments to participants' individual accounts absent a need for a corrective adjustment. A plain reading of the Plan's terms indicate that the corrective adjustments are meant to fix errors, not provide participants with arbitrary extra funds. (*See* Plan § 12.6 (providing that mathematical or accounting errors may be corrected "as the Plan Administrator in its discretion considers appropriate").) Matula's attempt to seek extra payments that he was not promised under the Plan must be rejected. *See Smith v. UnitedHealth Grp., Inc.*, 106 F.4th 809, 813–14 (8th Cir. 2024) (affirming dismissal for lack of Article III standing because health insurance plan participants did not allege a failure to

receive benefits to which they were contractually entitled). *Cf. Naylor v. BAE Sys., Inc.*, No. 1:24-536, 2024 WL 4112322, at *2 (E.D. Va. Sept. 5, 2024) (rejecting argument that ERISA required the defendant to disregard the terms of the plan by using forfeited funds to pay a "windfall" to plan participants); *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540–41 (2020) (finding participants of defined benefit plan lacked Article III standing because they were not seeking to recover any benefits they were denied); *Harley v. Minn. Min. & Mfg. Co.*, 284 F.3d 901, 906–07 (8th Cir. 2002) (holding investment loss did not cause actual injury to defined benefit plan participants' interests in the plan). Because the Plan does not authorize Wells Fargo to use forfeited funds to make extra payments to participants' accounts absent a need to correct an error—and absent an allegation that Matula was denied adjustments to correct errors to his account—Matula lacks Article III standing on this second ground.

Overall, Matula alleges no injury in fact, and thus no Article III standing, because the Plan does not authorize Wells Fargo to use forfeited funds to pay optional services and operating expenses of the Plan or to make arbitrary payments to participants' individual accounts when there is no error to correct. *Cf. Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1301 (D. Minn. 2021) (finding Article III standing where plaintiff sufficiently alleged that defendant's maintenance of and investment decisions for the defined contribution retirement plan harmed plan participants); *Schave v. CentraCare Health Sys.*, No. 22-1555, 2023 WL 1071606, at *2 (D. Minn. Jan. 27, 2023) (same).

Accordingly, the Court lacks subject matter jurisdiction and will grant the motion to dismiss.

Because Matula lacks Article III standing, the Court need not analyze whether Matula released his claims or failed to state a claim for each of his causes of action.

## CONCLUSION

Matula brings this ERISA action individually and on behalf of a class of participants and beneficiaries of the Wells Fargo & Company 401(k) Plan, alleging that Wells Fargo illegally forfeited funds from the Plan by reducing future employer matching contributions instead of allocating the funds to benefit plan participants. However, the Plan does not authorize Wells Fargo to use forfeited funds to pay optional services and operating expenses of the Plan or to make corrective payments to participants' individual accounts absent an error to correct. Without an injury in fact, Matula lacks Article III standing, and the Court lacks subject matter jurisdiction. Accordingly, the Court will grant the motion to dismiss and dismiss the Complaint with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 37] is **GRANTED**.

2. The Complaint [Docket No. 1] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 18, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge